**UNITED STATES of America,**
**Libelant,**
**v.**
**An Article Of Drug Consisting Of 47 BOT-**
**TLES, MORE OR LESS, EACH CON-**
**TAINING 30 CAPSULES OF An Arti-**
**cle Labelled In Part: " * * * JENA-**
**SOL R.J. FORMULA '60' * * *",**
**Respondent.**

Civ. A. No. 1042–58.

United States District Court
D. New Jersey.
Aug. 15, 1960.

Chester A. Weidenburner, U. S. Atty., by Jerome D. Schwitzer, Asst. U. S. Atty., Newark, N. J., and Alvin L. Gottlieb (D. C. Bar) of the Office of the General Counsel, Food and Drug Admin., Dept. of Health, Welfare, etc., Washington, D. C., for the United States.

Platoff, Platoff & Heftler, Union City, N. J., for claimant, and Bass & Friend (N. Y. Bar), by Solomon Friend (N. Y. Bar), New York City, of counsel.

WORTENDYKE, District Judge.

This action is under the Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq., upon a libel of information charging misbranding of an article of drug. 21 U.S.C.A. § 352(a). Claimant's answer denies misbranding, and also affirmatively pleads that a prior proceeding in the Post Office Department, under 39 U.S.C. A. § 259, was settled by claimant's affidavit of July 17, 1957, the effect of which, claimant contends, was to ratify the marketing of claimant's product upon condition that specified changes be made in the language of the circular material accompanying the product, which the Post Office Department charged contain-

ed false representations. A copy of the Affidavit of Agreement in the Post Office Department suit is annexed to claimant's answer here. By the terms of that affidavit, claimant agreed to refrain from making any of the therein specified representations or claims respecting his product in any future mail order operation of the enterprise involved in the Post Office Department proceeding. Claimant further pleads in the present case that he has destroyed the literature and circulars complained of by the Postmaster General and has printed new and revised circulars which the Judicial Officer of the Post Office Department, after hearing, has adjudged not to be in violation of claimant's Affidavit of Agreement. Because these new and revised circulars are alleged by him to be the same as those complained of in the present action, claimant contends that the "adjudication" of the Post Office Department approving them is "res administrata" and a bar to the present action. To the effect that such a plea would not withstand a motion to strike, see United States v. 42 Jars * * * "Bee Royale Capsules", D.C.N.J.1958, 160 F.Supp. 818, affirmed 3 Cir., 1959, 264 F.2d 666. The Affidavit of Agreement referred to states in part:

"Affiant understands that this affidavit relates exclusively to the proceeding specified in the caption hereof and its filing will not act as a defense or relieve the undersigned (present claimant) of responsibility for violation of any other statute, but the filing shall not be construed as a confession that the said instant statutes or any other statute has been violated."

To interrogatories propounded by the Government in the present action, claimant responded that he declined to answer them "on the grounds that the matters inquired into are privileged under the Fifth Amendment of the Constitution of the United States" because "criminal liability may be imposed upon

the claimant for the same alleged wrong." The Government has moved to strike this response to its interrogatories, and for an order compelling claimant to answer them upon the ground that the asserted constitutional privilege has been waived. In its companion motion, the Government seeks a "protective order under F.R. C[iv].P. 30(b) [28 U.S.C.A.] striking * * * interrogatories" propounded by claimant to libelant upon the ground that it would be unjust and unfair to permit claimant to make discovery of libelant while effectively asserting privilege to refuse to afford discovery to libelant. This second and contingent motion is denied. No authority has been cited or discovered which makes the right of one party to obtain discovery under Rules 33 or 26 dependent upon the obligation of that party to make discovery to his adversary under either of the same rules, nor is such authority implicit in the discretion accorded by Rule 30(b).

█ The motion to strike claimant's response to the Government's interrogatories is grounded upon movant's contention that the constitutional privilege, if any, which claimant might have enjoyed to refuse to answer the Government's interrogatories has been intentionally and effectively waived by the claimant by pleading the affirmative defense in his answer and by attaching thereto the copy of the "Affidavit of Agreement" filed in the prior Post Office proceeding. In other words, the Government contends that any privilege which claimant might otherwise have to refuse to answer the Government's interrogatories for risk of self-incrimination has been waived by claimant's affirmative verified plea that the representations alleged to constitute misbranding were actually made and approved by the Post Office Department in the Fraud Order proceeding which was disposed of by the hearing pursuant to the Affidavit of Agreement. The Government argues that claimant's verified allegation that the literature involved in the present case is the same as that approved in the Post Office Department proceeding is equivalent to his voluntary disclosure under oath of incriminating facts which amounts to a waiver of the privilege to refuse to answer interrogatories respecting the details and particulars of the representations embodying the misbranding complained of in the present action. For the purposes of the Government's motion I must assume that responsive answers to libelant's interrogatories to claimant would be privileged under the Fifth Amendment. The sole question presented, therefore, is whether such a privilege, if it would otherwise exist, has been waived in the manner and for the reasons asserted by the Government.

█ In support of its assertion of waiver the Government relies upon Sears, Roebuck & Co. v. American Plumbing & Supply Co., D.C.E.D.Wis.1954, 19 F.R.D. 329, and Brown v. United States, 1958, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589. In the Sears, Roebuck case, the relevant facts were as follows: Plaintiff sought recovery of the amount of secret commissions allegedly paid to its agent by the defendant. In opposition to plaintiff's motion for summary judgment in a prior action arising out of substantially the same facts, defendant had filed an affidavit made by its president making disclosures of facts which tended to incriminate the affiant. Efforts to further explore the circumstances surrounding the facts disclosed in this affidavit by taking of the affiant's deposition in the cited case were met by a refusal to testify thereon upon the ground of privilege under the Fifth Amendment. The Sears, Roebuck decision held that disclosures made by the president of the defendant in an affidavit filed in opposition to plaintiff's motion for summary judgment amounted to a waiver of the constitutional privilege, if any, otherwise available to the affiant when examined on deposition seeking to explore all aspects of the transaction disclosed in the affidavit. In the language of Chief Judge Tehan,

19 F.R.D. at page 333: "The * * * affidavit has been interposed in this action as a vehicle to defeat plaintiff's motion for summary judgment. It has been made a part of the file and no attempt has been made to withdraw it. This is an adversary proceeding. * * * Plaintiff desires to question * * * (affiant) relative to the assertions which he has made and to this the witness cries privilege. The Court is of the opinion that such privilege, if any exists, has been waived, and that * * * (affiant) must now give all of the circumstances and details as to every act and transaction to which his affidavit refers." Brown v. United States, supra, arose out of a denaturalization proceeding. At the trial, when called as an adverse witness by the Government under Rule 43(b) of the Federal Rules of Civil Procedure, the defendant admitted prior communist associations, but refused to answer questions about her activities and associations after a certain date upon the ground that her answers might tend to incriminate her. Defendant's counsel waived cross-examination upon the completion of the Government's direct, but defendant took the stand in her own behalf upon the defense. Upon the Government's cross-examination defendant refused to answer a question seeking to ascertain whether she was then or had ever been a member of the Communist Party of the United States. The trial Court held that in taking the stand in her own defense, petitioner had abandoned the constitutional privilege which she asserted, and directed her to answer. She persisted in her refusal to do so, was held in contempt and sentenced to imprisonment. This conviction was affirmed by the Court of Appeals. The Supreme Court, speaking through Mr. Justice Frankfurter, in affirming the conviction, held (356 U.S. at page 155, 78 S.Ct. at page 627) that "When a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness had the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to satisfy at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross examination on the matters he has himself put in dispute."

Claimant here relies, *inter alia,* upon McCarthy v. Arndstein, 1923, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023, which (together with Arndstein v. McCarthy, 1920, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138) was distinguished by the Court in the Brown case, supra. In the Arndstein case cited by the present claimant (262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023) the question of waiver of Fifth Amendment privilege was presented against the following factual background: An involuntary bankrupt, during the course of a 21a examination, refused to answer numerous questions which were put to him upon the ground that to do so might tend to incriminate him. A motion to punish him for contempt was denied by the District Court. Subsequently, however, the bankrupt filed, without objection, sworn schedules of his assets and liabilities disclosing a substantial bank deposit. He was then recalled for further examination and again refused to answer similar questions upon the ground previously availed of. He was then found guilty of contempt and committed. His petition for a writ of habeas corpus was refused and upon appeal from the denial of the writ, the Supreme Court referring to its prior decision (Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138) held that "As the schedules did not amount to an admission of guilt or furnish clear proof of crime, they did not constitute a waiver of his (the bankrupt's) right to stop short whenever he could fairly claim that

to answer might tend to incriminate him." On remand the District Court vacated its order denying the writ of habeas corpus and issued the writ. Upon hearing thereon, the District Court concluded that despite the bankrupt's denial of possession of securities, the Supreme Court's finding respecting the effect of the filing of the schedules did not deprive the bankrupt of the right to refuse to testify further about his property. The writ was accordingly issued and the bankrupt discharged from custody. The case came back to the Supreme Court on appeal by the United States Marshal upon the constitutional question involved (262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023). In affirming the District Court in granting the writ and discharging the bankrupt from custody, the Supreme Court, on the second appeal, speaking through Mr. Justice Sanford, (262 U.S. at page 359, 43 S.Ct. at page 563), held that the schedules were non-incriminating and therefore did not render inapplicable the general rule that "where the previous disclosure by an ordinary witness is not an actual admission of guilt or incriminating facts, he is not deprived of the privilege of stopping short in his testimony whenever it may fairly tend to incriminate him." The Court treated the 21a proceeding as an involuntary examination of the bankrupt where he was practically in the position of a witness under cross-examination. Hence, it concluded that since none of the answers which were voluntarily given amounted to an admission of guilt, the bankrupt was entitled to decline to answer further questions which might tend to incriminate him.

As recently as 1958, in Isaacs v. United States, 256 F.2d 654, the Eighth Circuit reminded us that the provisions of the Fifth Amendment must be liberally construed toward protection of the rights which it was intended to secure, and that every reasonable presumption against waiver of such rights must be indulged.

See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. If, as was not the fact in Brown v. United States, supra, the allegations constituting claimant's affirmative defense do not amount to an admission of guilt or furnish clear proof of crime, claimant's constitutional privilege to refuse to answer interrogatories must be sustained if responsive answers thereto might tend to incriminate him. Bowles v. Trowbridge, D.C.N.D.Cal.1952, 60 F.Supp. 48; F.R. Civ.P. 26(b). I am unable to spell out a waiver of claimant's right to avail himself of his privilege under the Fifth Amendment to refuse to answer the interrogatories in question. Claimant's affirmative defense does not constitute an admission that the representations criticized by the Post Office Department were false, but on the contrary merely states that the Department's complaint *alleged* their falsity. It is further expressly stated in the plea that the settlement agreement consummated in the Post Office proceeding involved claimant's relinquishment of and undertaking not to resume the use of certain representations, and that the Department found that such undertaking had been complied with. Indeed, the plea asserts that the criticized literature was destroyed and replaced by new and revised printed material which was *not* in violation of the terms of the settlement agreement. I am unable to spell out from the language, either of the claimant's answer, or of the copy of the Affidavit of Agreement in the Post Office Department proceeding thereto annexed, a voluntary disclosure under oath of facts which might tend to incriminate the claimant. Therefore, I am forced to the conclusion that there has been no waiver of claimant's claimed privilege to refuse to answer the Government's interrogatories and that the Government's first motion must also be denied.

An appropriate order may be presented.