10-DIX BUILDING CORPORATION *et al.*, Plaintiffs-Appellees, v. MARGA-RET McDANNEL *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 83—1314, 84—775 cons.

Opinion filed June 28, 1985.

Paddy Harris McNamara, of Chicago (Jane Field Derbyshire, of counsel), for appellants.

Robert N. Caffarelli, William M. McErlean, and Angelika Kuehn, all of Boodell, Sears, Giambalvo & Crowley, of Chicago, for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

In these two consolidated appeals, defendants Margaret and Leonard McDannel seek reversal of orders finding them in contempt of court and entering sanctions of default and attorney fees against them. The sanctions were imposed as a result of defendants' refusal to comply with court orders compelling discovery. The court ordered Margaret to pay plaintiffs $40,195 in compensatory damages, $60,000 in punitive damages, and required her to forfeit four years and three months' salary she received from two of the three corporate plaintiffs. The court, however, dismissed the claim against Leonard, finding there was insufficient evidence of damages as to him. Plaintiffs cross-appeal the dismissal. For the following reasons, we affirm in part, and reverse and remand in part.

The three corporate plaintiffs are businesses owned and operated by Gene R. Farina (Farina), the individual plaintiff in this case. Plaintiff 10-Dix Building Corporation (10-Dix) owns and manages an office

building in Chicago Heights; plaintiff Farina Insurance Agency Corp. (Farina Insurance) is an insurance agency; and plaintiff Summerwood Enterprises, Inc. (Summerwood), is a hotel in Lake Placid, New York.

As of May 1983, defendants Margaret and Leonard McDannel had been married for approximately 15 years. From 1975 through March 1980, Margaret was employed by 10-Dix and Farina Insurance as bookkeeper and general office administrator for the three corporate plaintiffs. Leonard, although a school teacher by profession, was employed by 10-Dix as a janitor and "handyman" during that same period.

On December 2, 1980, plaintiffs filed a 42-paragraph complaint in chancery alleging that defendants embezzled from plaintiffs in excess of $100,000 during the course of their employment. Plaintiffs alleged that defendants, acting in conspiracy, misappropriated funds by using Margaret's check cashing authority and "position of trust" to fraudulently pay the defendants' household and other personal bills, to acquire three pieces of real estate and to build up a cash fund. The complaint contained two counts, the first in equity and the second at law. Count I prayed for an accounting, disgorgement, injunctive relief, compensatory and punitive damages and attorney fees and costs. Count II sought compensatory and punitive damages and legal fees and costs. Later that month, plaintiffs filed their first request for the production of documents.

Both defendants initially filed motions to strike the complaint which were denied by the court. Thereafter, on August 14, 1981, defendants filed answers to the complaint, which were signed by their attorney. Margaret's answer admitted the jurisdictional allegations and employment relationship, totally denied the allegations in 22 paragraphs and answered another three paragraphs by asserting insufficient knowledge. The answer admitted the allegations in one paragraph that defendants' daughter, Jill McDannel, received funds in excess of what she was entitled to. Finally, Margaret stated in response to the allegations in the remaining paragraphs that any alleged overpayments were acquiesced in by Gene Farina. For example, paragraph 27 alleged:

"On at least 11 occasions, Margaret McDannel drew checks on the bank account of Farina Insurance to the order of 'cash,' or to the order of another payee, delivering these checks to such payees in exchange for cash which she retained for her personal use and the use of Leonard McDannel."

Margaret answered as follows:

"The defendant admits that she drew some checks made to

the order of cash on the account of Farina Insurance, but denies that she retained any money that was not due her, and any money that she did retain was so retained with the full knowledge of and at the direction of Gene R. Farina."

On September 4, 1981, two of the plaintiffs' attorneys met with defendants' attorney pursuant to a suggestion by the court that the parties attempt to settle this matter. At that meeting, one of the plaintiffs' attorneys, Robert Cafferelli, made what defense counsel understood to be a threat of criminal prosecution if the matter was not settled to the satisfaction of plaintiffs. Defendants' attorney then gave notice that, as a result of the statements made by Cafferelli at the conference, Margaret would avail herself of the right to assert the fifth amendment privilege against self-incrimination. On September 15, 1981, plaintiffs deposed Margaret. At her deposition, after stating her name and address, Margaret invoked the fifth amendment privilege as to all subsequent questions.

The following month, Leonard's deposition was taken during which he was questioned extensively as to his finances. He produced documents at the time of his deposition and in November 1981. He refused, however, to produce documents over which Margaret had possession and control.

On November 20, 1981, plaintiffs filed a motion to compel discovery. Plaintiffs claimed that Margaret waived any fifth amendment privilege by answering the complaint and that her assertion of the privilege was overly broad. Attached to plaintiffs' motion was the affidavit of attorney Cafferelli, in which he admitted demanding from Margaret at the September conference full disclosure of the "amounts she had taken from the plaintiffs" and the disclosure as to how she would pay the money. Cafferelli further acknowledged that when defendants' attorney refused to accede to this demand he responded, "[W]ith an attitude like that, Margaret McDannel was headed right to jail." Cafferelli admitted he made reference to the State's Attorney and indicated that, in determining whether to prosecute, the State's Attorney might consider whether or not restitution was made. Finally, the affidavit indicates that one year prior to the September 4, 1981, conference, an assistant State's Attorney had interviewed Margaret in the presence of the affiant, Gene Farina, and Margaret's former attorney. No mention is made in the affidavit as to what transpired at the interview or its purpose.

On February 28, 1983, the court granted plaintiffs' motion to compel, ruling that Margaret had waived her testimonial privilege to the extent she had made substantive statements of fact in her answer,

and ordered her to answer deposition questions with respect to these substantive statements. The court also ordered Margaret and Leonard to produce the documents requested. The court ruled that Margaret could not assert a privilege with respect to the documents.

On March 7, 1983, Margaret was indicted. Defendants requested reconsideration of the court's ruling on the motion to compel in light of the indictment. On April 6, 1983, the court reaffirmed its prior ruling and ordered Margaret to answer deposition questions concerning the facts underlying her answer to the complaint.

On May 3, 1983, Margaret appeared for her second deposition and again asserted the fifth amendment privilege. She additionally refused to produce any documents, claiming the fifth amendment. Leonard also did not produce more documents.

On May 5, 1983, plaintiffs filed a motion for sanctions for defendants' failure to comply with discovery orders. The court thereafter issued a rule to show cause against Margaret and Leonard for their failure to comply with the discovery ordered by the court. On May 18, 1983, after hearing arguments but no testimony, the court found Margaret in contempt and ordered Leonard to appear for a hearing on the question of whether he had control over the documents sought, and reserved ruling on the question of sanctions. On May 20, 1983, following a hearing on the control issue, the court entered an order finding Leonard in contempt, striking the answers of both defendants and entering a judgment of default on count I as to Margaret and Leonard. On May 25, 1983, the court entered another order requiring defendants to pay plaintiffs $7,644 for attorney fees and costs they incurred as a result of defendants' failure to comply with discovery. Defendants appealed the court's orders under docket No. 83—1314.

On June 23, 1983, the court began a prove-up on the default judgments. Defendants attempted to show at the prove-up that Margaret was in fact authorized by Farina to sign the checks in question as part of an irregular scheme of compensation Farina instituted for tax purposes. Following the prove-up, the court ordered Margaret to pay plaintiffs $40,195 in compensatory and $60,000 in punitive damages, and ordered her to forfeit her salary for four years and three months. The court, however, dismissed count I as to Leonard for insufficient proof of damages. The court stated that its judgment was final and appealable as to count I and transferred the cause for reassignment to the law division for further proceedings as to count II. Margaret filed an appeal from the entire judgment, and plaintiffs cross-appealed the court's ruling in favor of Leonard under docket No. 84—775.

# I

We first review the propriety of the trial court's order holding Margaret in contempt for failure to comply with court orders requiring her to answer deposition questions and produce documents. The court held that Margaret, by answering plaintiffs' complaint, waived her right to assert the fifth amendment privilege against self-incrimination in response to discovery. Without citing authority, the court found that once a factual statement is made, whether or not incriminating on its face, the fifth amendment privilege is waived with respect to questions as to facts underlying the statement.

Margaret contends, and we agree, that the court erred in finding a waiver. It is well established that the provisions of the fifth amendment must be liberally construed toward protection of the rights which the amendment was intended to secure, and every reasonable presumption against waiver of such rights must be indulged. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019; *Isaacs v. United States* (8th Cir. 1958), 256 F.2d 654.) The fact that the fifth amendment privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection. *Lefkowitz v. Cunningham* (1977), 431 U.S. 801, 805, 53 L. Ed. 2d 1, 6, 97 S. Ct. 2132, 2135.

As early as 1924, the Supreme Court held that the fifth amendment privilege is not waived by the filing of nonincriminating pleadings in a civil action. (*Arndstein v. McCarthy* (1920), 254 U.S. 71, 65 L. Ed. 138, 41 S. Ct. 26.) *Arndstein* involved a bankruptcy proceeding where the bankrupt refused to answer certain questions on the ground that the answers might incriminate him. Subsequently, during the course of the proceedings, he filed sworn schedules of assets. He was again called to testify and again refused to answer questions. The Supreme Court held that the signed schedule did not constitute a waiver because "[t]he schedules, standing alone, did not amount to an admission of guilt, or furnish clear proof of crime." 254 U.S. 71, 72, 65 L. Ed. 138, 142, 41 S. Ct. 26, 26.

Following *Arndstein*, cases have held that the fifth amendment privilege is not waived by the filing of a complaint followed by an answer to a counterclaim (*Backos v. United States* (E.D. Mich. 1979), 82 F.R.D. 743), or by responding to interrogatories (*Duffy v. Currier* (D. Minn. 1968), 291 F. Supp. 810), or by the pleading of an affirmative defense (*United States v. 47 Bottles* (D. N.J. 1960), 26 F.R.D. 4). The court in *47 Bottles*, in finding that the affirmative defense did not waive the fifth amendment privilege, applied the standard articulated in *Arndstein* and stated:

"If *** the allegations constituting claimant's affirmative defense do not amount to an *admission of guilt or furnish clear proof of crime*, claimant's constitutional privilege to refuse to answer interrogatories must be sustained if responsive answers might tend to incriminate him." (Emphasis added.) 26 F.R.D. 4, 8.

■ Applying *Arndstein* to the present case, the record does not support a finding that Margaret waived her fifth amendment rights by answering the complaint. To find a waiver, it was incumbent upon the trial court to determine that the responses in the answer amounted to an "admission of guilt or furnish clear proof of crime." The court in this case never made such a finding. On the contrary, the court specifically stated that the responses in the answer were *not* incriminating. In the absence of a determination that her answer met the standard set forth in *Arndstein*, Margaret cannot be presumed to have waived her fifth amendment privilege. To so hold would violate the established tenet that every reasonable presumption *against* waiver of the privilege must be indulged. *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.

Plaintiffs, in support of their position that an answer to a civil complaint waives the privilege against self-incrimination, cite *National Acceptance Co. v. Bathalter* (7th Cir. 1983), 705 F.2d 924. That case, however, holds merely that the privilege *may* be invoked in an answer, not that it must be.

■ Plaintiffs alternatively contend that even if Margaret did not waive the fifth amendment privilege, the trial court should be affirmed because her exercise of the privilege was overly broad. This argument is also unpersuasive. Plaintiffs, in support of this contention, rely on *People v. Mileris* (1981), 103 Ill. App. 3d 589, 431 N.E.2d 1064. Plaintiffs, however, have quoted out of context from *Mileris*. That case, when properly read in its entirety, actually supports defendants' position in this case. In *Mileris*, a grand jury witness made a blanket assertion of the fifth amendment privilege as to certain medical records. The trial court had accepted the State's Attorney's argument that the records sought were within the required records exception to the privilege and held the witness in contempt. The basis for the privilege was not addressed by the trial court. This court vacated the contempt finding, holding that the exception did not cover the records sought and remanded the case to the circuit court to review the witness' blanket assertion of the privilege. We stated, "[I]t is for the court to determine *after a hearing* whether the fear of incrimination is valid, and if reasonable, how far the valid privilege

extends." (Emphasis added.) 103 Ill. App. 3d 589, 595.

In the present case, the court held no hearing to ascertain the reasonableness of Margaret's assertion of the fifth amendment privilege. The court in fact never ruled on the validity of her claim of privilege, but only on the waiver question.

Plaintiffs' argument above is further undermined by our holding in *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57, *cert. denied* (1979), 444 U.S. 841, 62 L. Ed. 2d 53, 100 S. Ct. 80. There, we made it clear that when a defendant in a civil action asserts the fifth amendment during a deposition, the trial court is obliged to scrutinize each disputed question and rule on the reasonableness of the defendant's refusal to answer. We stated:

"As counterdefendants, the plaintiffs here clearly retained their Fifth Amendment privilege against self-incrimination at the depositions. The trial court, however, did not conduct a review of each question in order to determine whether the answer could possibly have tended to incriminate plaintiffs. We believe plaintiffs, in their capacity as counterdefendants, were entitled to such a question by question determination in order to adequately protect their rights under the Fifth Amendment." (66 Ill. App. 3d 476, 483.)

We reversed the default judgment entered against the counterdefendants in *Galante* and remanded the cause for further proceedings.

In the present case, the court failed to conduct a particularized review of the deposition questions, even though the record reflects that counsel for defendants specifically requested such a review. Nor did the court conduct any type of review with regard to the documents that were sought. Instead, in its order granting plaintiffs' motion to compel, the court merely indicated that the fifth amendment privilege did not protect any of the documents requested under *Fisher v. United States* (1976), 425 U.S. 391, 48 L. Ed. 2d 39, 96 S. Ct. 1569.[1] This ruling was erroneous. Among the items sought in this case were cancelled checks and bank records. In *United States v. Porter* (7th Cir. 1983), 711 F.2d 1397, it was held that cancelled checks and bank deposit slips sought in discovery were precisely the types of documents entitled to fifth amendment protection under *Fisher*.

■■ ■ We note that Margaret was not deprived of the protection

---

[1]The court in *Fisher* held that a fifth amendment interest arises in documentary disclosure where "[t]he act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced." 425 U.S. 391, 410, 48 L. Ed. 2d 39, 56, 96 S. Ct. 1569, 1581.

of the fifth amendment by virtue of the fact that no indictment had yet issued when she initially claimed the privilege. A party who reasonably apprehends a risk of self-incrimination may claim the privilege even though no criminal charges are pending against him (*Savannah Surety Associates, Inc. v. Master* (1978), 240 Ga. 438, 439, 241 S.E.2d 192) and even if the risk of prosecution is remote (*In re Master Key Litigation* (9th Cir. 1974), 507 F.2d 292, 293; see also, *Wehling v. Columbia Broadcasting System* (1979), 608 F.2d 1084, 1087 n.5.). In the present case, Margaret had a reasonable fear of self-incrimination following certain statements made by Robert Cafferelli, an attorney for plaintiffs, at a settlement conference the week prior to her first deposition.

Plaintiffs cite the proposition that "the mere fact that criminal proceedings are pending does not excuse a witness from testifying in a civil proceeding unless there is a nexus between the information sought and the risk of criminal conviction." (*Martin-Trigona v. Gouletas* (7th Cir. 1980), 634 F.2d 354.) Plaintiffs assert that no such nexus was shown in the present case. This assertion is erroneous. Our review of the record reveals that the lower court was presented with ample evidence that a nexus existed between the instant action and the pending criminal proceedings. In their supplemental motion to reconsider the February 28, 1983, order granting plaintiffs' motion to compel, defendants informed the court that Margaret was indicted on March 7, 1983, and that her arraignment was set for March 25, 1983. Attached in support of that motion was an affidavit by Margaret's attorney setting forth details of recent conversations she had with Jeffrey Kent, chief of the special prosecutions bureau of the Cook County State's Attorney's office. The affidavit disclosed that Margaret and the affiant met with Kent on October 12, 1982, for the purpose of obtaining handwriting exemplars from Margaret. At that time, the affiant was told that the State's Attorney's office was investigating complaints made by Gene Farina. On February 24, 1983, Kent told the affiant that Margaret was still under investigation, that several questions remained, and, if these questions were not resolved favorably and within a short time period, Kent would "follow through on Gene Farina's complaints that Margaret McDannel had embezzled money from his business while she was an employee."[2]

The supplemental motion requested the court stay proceedings until the resolution of the pending criminal litigation. Faced with similar

[2]At oral argument before this court, counsel for Margaret informed the court that Margaret had been convicted of three misdemeanors in the criminal proceeding.

circumstances, other courts have routinely stayed discovery in a civil case pending resolution of a closely related criminal action against the party invoking the privilege. (*Dienstag v. Bronsen* (S.D.N.Y. 1970), 49 F.R.D. 327; *Duffy v. Currier* (D. Minn. 1968), 291 F. Supp. 810; see also *Jones v. B.C. Christopher & Co.* (1979), 466 F. Supp. 213, 224.) The trial court in this case, however, refused to enter a stay and instead imposed severe sanctions pursuant to Supreme Court Rule 219(c) (58 Ill. 2d R. 219(c)). Imposing the harshest of the Rule 219(c) sanctions for a proper exercise of fifth amendment rights is not in accord with United States Supreme Court decisions. The court has held that a person is to suffer no penalty for his silence. (*Spevack v. Klein* (1967), 385 U.S. 511, 515, 17 L. Ed. 2d 574, 577, 87 S. Ct. 625, 628.) In *Spevack*, the court stated: "In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in *Griffin v. California*, 380 U.S. 609, the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' "

Given these principles, and our findings above with regard to both the waiver issue and the court's failure to properly review the validity of Margaret's assertion of the fifth amendment privilege, we must reverse the orders entering sanctions against Margaret pursuant to Rule 219(c). The cause as to her is remanded to the circuit court for further proceedings.

## II

■ We next review the trial court's rulings as to Leonard McDannel. The court held Leonard in contempt of court for his failure to comply with its orders directing him to produce documents. Pursuant to Supreme Court Rule 219(c) (58 Ill. 2d R. 219(c)), the court struck his answer, entered an order of default against him and ordered him to pay plaintiffs $7,644 in attorney fees and costs. Following the prove-up, however, the court held that the claims against Leonard must be dismissed because there was insufficient evidence as to damages.

We believe that the trial court correctly determined that plaintiffs proved no damages as to Leonard, even if he is found in default. We have considered plaintiffs' contentions as to this issue and find them without merit. Plaintiffs first argue that the trial court erred as a matter of law in finding that Leonard was not a fiduciary. Citing *H. Vincent Allen & Associates v. Weis* (1978), 63 Ill. App. 3d 285, 291, 379 N.E.2d 765, plaintiffs allege they were prejudiced by this finding since "no burden was placed on Leonard to justify his dealings with 10-Dix' assets such as unearned salary and personal charges at Ace

Hardware." The record reveals, however, that the facts pleaded and evidence adduced at the prove-up concerning Leonard's relationship with plaintiffs established only that he was employed as a janitor and handyman for 10-Dix. While both Leonard and Farina testified as to Leonard's right to charge items on the 10-Dix account at Ace Hardware, the trial court correctly determined that the right to charge janitorial supplies does not transform a janitor into a corporate fiduciary. His position is in no way similar to the officers and directors who were held to be corporate fiduciaries in the *H. Vincent Allen* case cited by plaintiffs.

Moreover, although Farina testified as to allegedly unauthorized charges made by Leonard at Ace Hardware, no documentation in support of his testimony was received in evidence. Also, his testimony was contradicted by Leonard's testimony that although he made some personal charges at Ace Hardware, the plaintiffs had been reimbursed. The trial court apparently believed Leonard. It is the province of the trial judge, as the trier of fact, to resolve the credibility of witnesses and the weight to be given their testimony, and the reviewing court will not substitute its judgment thereon unless the opposite conclusion is clearly evident. (*Gibson v. State Farm Mutual Automobile Insurance Co.* (1984), 125 Ill. App. 3d 142, 465 N.E.2d 689.) Based on the record before us, we cannot say that an opposite conclusion is clearly evident.

Finally, contrary to plaintiffs' assertion, the evidence in the record fails to provide a sufficient basis to support their allegations that Leonard had knowledge he was receiving the benefits of any of plaintiffs' unauthorized funds. Without facts to support them, the conclusions in the complaint will not support a judgment even if Leonard is found in default. We have held that a court has the discretion to require proof of the allegations upon which a default is based before awarding damages. (*Colonial Penn Insurance Co. v. Tachibana* (1977), 53 Ill. App. 3d 981, 983, 369 N.E.2d 177.) Accordingly, the dismissal of count I as to Leonard is affirmed.

We further find that the court erred in ordering Leonard to pay in excess of $7,000 in attorney fees and costs pursuant to Supreme Court Rule 219(c) (58 Ill. 2d R. 219(c)). Under that rule, the trial court may assess attorney fees and costs incurred by reason of the opposing party's misconduct in refusing to comply with the rules of discovery. The assessment is discretionary and will not be interfered with unless the trial court's discretion has been abused. *Van Hyning v. Hyk* (1979), 78 Ill. App. 3d 721, 397 N.E.2d 566.

In the present case, the record reveals that Leonard made a

good faith attempt to cooperate with plaintiffs' discovery requests. At his deposition on October 12, 1982, he produced some of the documents requested and testified extensively as to various loans and property he and his wife owned and his source of income as a junior high school teacher. The following month he produced additional documents concerning six loans, his credit union account from the school district where he was employed, paycheck statements from the school district and pleadings in three lawsuits by and against Leonard and his wife. Additionally, plaintiffs subpoenaed from independent sources most of the documents not produced by Leonard such as utility bills and various charge account records. Leonard maintained at the contempt hearing that he did not produce the remaining documents because prior to and at the time of the hearing they were under the control and possession of Michael Nash, Margaret's attorney in the criminal proceeding. An affidavit and other documentation to this effect were submitted by Leonard's attorney. It is held that the present lack of possession or control of documents is a defense to a charge of contempt. (*United States v. Rylander* (1983), 460 U.S. 752, 75 L. Ed. 2d 521, 103 S. Ct. 1548.) Here, plaintiffs' attorney Cafferelli acknowledged at the contempt hearing that the documents were in Nash's possession. There was no suggestion at any time that Leonard had control over Nash's handling of the documents. Indeed, the record reveals that the trial court never made any finding that Leonard had possession or control of the documents in question. Under the foregoing circumstances, we conclude that the court's order requiring Leonard to pay plaintiffs' attorney fees and costs was an abuse of discretion and is hereby reversed.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

CAMPBELL and O'CONNOR, JJ., concur.