THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff-Appellant, v. KAFKA AND SONS BUILDING AND SUPPLY COMPANY, INC., a/k/a Remodeling by Kafka, Inc., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—1962

Opinion filed March 29, 1993.—Rehearing denied May 5, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of Chicago, of counsel), for appellant.

Stephen C. Tennant, of Arlington Heights, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

This interlocutory appeal arises from an order of the circuit court staying enforcement of a final judgment and consent decree (consent decree) entered into between the Illinois Attorney General (Attorney General) and defendant, Ronald W. Kafka (Kafka), pending the resolution of a criminal indictment against defendant. On appeal, the Attorney General argues that the circuit court erred in staying the proceedings under the consent decree. For the following reasons, we affirm the judgment of the trial court.

The record reveals the following relevant facts. In August 1985, the Illinois Attorney General (Attorney General) filed a complaint for injunctive and other relief against defendant, Kafka & Sons Building and Supply Company, Inc., Suburban Remodeling, Inc., and Remodeling by Kafka, Inc., alleging numerous violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and the Uniform Deceptive Trade Practices Act (UDTPA) (Ill. Rev. Stat. 1985, ch. 121½, par. 312). On January 25, 1989, defendant and the Attorney General entered into a final judgment and consent decree in court. Findings in the consent decree based on the allegations of the complaint were as follows:

"(D) Defendant Ronald W. Kafka is an individual who was the president of KAFKA & SONS BUILDING and SUPPLY COMPANY, INC., and chief executive of SUBURBAN REMODELING, INC. and REMODELING BY KAFKA, INC.

(E) Defendant, through the above corporate entities, engages in the business of advertising, offering to sell and selling home repair and remodeling goods and services to Illinois consumers.

(F) Plaintiff has alleged that Kafka violated the Consumer Fraud Act and the UDTPA by engaging in the following conduct:

(1) failing or refusing to complete work on homes of consumers as specified in their contracts;

(2) failing or refusing to provide consumers with a written and detachable 'Notice of Cancellation' form advising consumers of their right to cancel the transaction within three business days;

(3) failing to disclose to consumers Kafka's use of subcontractors;

(4) failing or refusing to provide consumers with sworn statements of said contractors as required under the Illinois Mechanics' Lien Act; and

(5) failing or refusing to pay subcontractors for labor performed and materials furnished on behalf of consumers, despite the fact that Kafka had received payment from consumers."

The consent decree permanently enjoined defendant from engaging in 52 complained-of business practices in violation of the Consumer Fraud Act and the UDTPA, and set forth a procedure for resolution of consumer complaints against defendant and his entities on file with the office of the Attorney General. The resolution procedure provided that defendant must first attempt to resolve any outstanding complaints by contacting the consumer directly. If those efforts failed, the consumer had the right to seek assistance from the Attorney General, who may then refer the complaint to Mr. Donald Macke. The consent decree designated Mr. Macke as an "expert," responsible for resolving consumer complaints in arbitration-like proceedings. The consent decree provided:

"(A) The expert shall have the right to settle all questions of fact concerning verbal representations and written agreements, and shall not be bound by formal rules of evidence.

(B) The expert shall decide the amount, if any, to be paid to the complainant as and for restitution. If restitution is due from Kafka to any complainant, such amount as is decided by the expert to represent a fair and accurate sum to be returned, shall be paid by Kafka within twenty (20) days by cashier's or certified check, unless such decision is contested by application to the court therefor. In order to obtain relief from the decision of the expert, the party seeking relief has the burden of showing that the expert's decision is patently unreasonable."

Defendant agreed to be bound by any decision made by Mr. Macke in these proceedings. The consent decree further provided, and defendant agreed, that "the only basis for relief from the expert's decision will be on application to this court therefor." In addition, defendant was ordered to pay the State of Illinois $50,000 as a civil penalty pursuant to the Consumer Fraud Act.

After entry of the consent decree, Mr. Macke conducted a number of arbitrations, making awards consistent with his findings, both in favor of the consumer and in defendant's favor. On at least five occasions, the Attorney General filed petitions for rules to show cause why the defendant should not be held in contempt of court for his failure to comply with awards made by Mr. Macke pursuant to the terms of the consent decree.

On February 28, 1991, the parties appeared before the trial court on the Attorney General's fifth petition for a rule to show cause why defendant had failed to comply with an award rendered by Mr. Macke in favor of consumer Mary Lou Walsh. The trial court ordered a rule to issue requiring defendant to show cause why he should not be held in indirect criminal contempt of court for intentionally violating the consent decree.

On May 21, 1991, the parties appeared before the trial court on return of the fifth rule to show cause regarding the Walsh claim. At that time, defendant presented a motion to stay the proceedings, asserting his fifth amendment privilege against self-incrimination. In the motion, defendant stated that he had been indicted in Cook County on eight felony counts of forgery and theft by deception connected to his home repair and remodeling business. Defendant stated that Mr. Macke, the appointed expert in the consent decree proceedings, was an alleged "victim" in two of the eight felony counts in the indictment against defendant, and that Mr. Macke is a likely witness in the civil proceeding on the rule to show cause. Therefore, defendant argued, he had demonstrated a possible interference with his rights against self-incrimination. The Attorney General responded *instanter*

that a stay based upon the criminal indictment was improper, as the matters resolved under the consent decree, *e.g.*, the Walsh matter, were not the subject of the indictment. Following argument, the trial court ordered all proceedings, including arbitrations, stayed pending resolution of the criminal charges filed against defendant. The Attorney General's timely appeal followed.

The issue before this court is whether the trial court erred in granting defendant's motion to stay all proceedings under the consent decree based upon defendant's fifth amendment privilege of self-incrimination.

■■ A party may claim the fifth amendment privilege in a pending civil matter to protect from involuntarily disclosing information which may implicate him criminally. (*10-Dix Building Corp. v. McDannel* (1985), 134 Ill. App. 3d 664, 480 N.E.2d 1212; *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57.) Where a criminal action is simultaneously pending with a civil action, courts may stay the civil proceeding based on the fifth amendment until the resolution of the criminal matter. (*10-Dix*, 134 Ill. App. 3d at 672-73.) Courts are willing to defer civil proceedings in such a manner, *inter alia*, to protect a party from making admissions or furnishing other proof of a crime; to protect the party from not being able to defend a civil suit regarding the same matter; to protect the party from abuse of discovery in the criminal matter; and to protect the party from otherwise prejudicing his criminal case. *S E C v. Dresser Industries, Inc.* (D.C. Cir. 1980), 628 F.2d 1368.

The Attorney General initially contends that a party's privilege against self-incrimination is limited to the discovery stage in civil litigation and does not apply to this matter, which has been conclusively resolved by the consent decree. (See *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 8, 476 N.E.2d 409 ("a decree entered by consent is *** a court's recording of an agreement reached by the parties in settlement of a dispute or claim").) Thus, the Attorney General argues, there is no pending civil case for purposes of analysis under the fifth amendment. In support, the Attorney General cites *10-Dix* and *Galante*. In *10-Dix*, this court held that defendant, Margaret McDannel, properly asserted her privilege in response to discovery requests because she reasonably apprehended a risk of self-incrimination based on statements made by plaintiffs' attorney threatening criminal prosecution. (*10-Dix*, 134 Ill. App. 3d at 672.) In *Galante*, this court held that as counterdefendants in a pending civil action involving alleged fraudulent insurance claims, plaintiffs stood as involuntary defendants rather than as voluntary ac-

tive litigants and therefore retained their fifth amendment privilege against self-incrimination at pretrial discovery depositions. *Galante*, 66 Ill. App. 3d at 483.

Our response to the Attorney General's argument is twofold. First, in the present case there is some dispute as to whether the consent decree settled all issues in the civil matter. The record shows that while the issue of liability is conclusively resolved between the defendant and the Attorney General, the issue of damages is not. The consent decree provides for subsequent determination of damage awards through proceedings which may be contested by defendant at the trial court level. The record indicates that consumer complaints on file with the Attorney General's office and subject to these post-judgment proceedings are plentiful in number. Therefore, the consent decree has not settled all issues in the civil matter.

Second, *10-Dix* and *Galante* do not support the proposition that the privilege against self-incrimination is limited to the discovery stage in civil litigation, but merely illustrate situations wherein the privilege has been successfully asserted. Our research shows that the privilege has been asserted in a case wherein a judgment had already been entered. In *Martin-Trigona v. Gouletas* (7th Cir. 1980), 634 F.2d 354, Martin-Trigona asserted his privilege against self-incrimination during asset discovery proceedings following the entry of civil judgment against him, and was found in contempt of court. On appeal, the Seventh Circuit found Martin-Trigona's assertion of the privilege improper only because Martin-Trigona failed to tender any credible reason why his response would pose a real danger of incrimination, and not a remote and speculative possibility. (*Martin-Trigona*, 634 F.2d at 362.) Accordingly, the success of a party's assertion of the fifth amendment privilege depends upon whether a party has claimed a real danger of incrimination, not whether a judgment has been entered.

In any event, the pendency of criminal proceedings does not automatically assure fifth amendment protection; there must exist some nexus between the risk of criminal conviction and the information requested. (See *Martin-Trigona*, 634 F.2d 354; *10-Dix*, 134 Ill. App. 3d at 672.) This ultimate question is one for the trial court. *Martin-Trigona*, 634 F.2d at 360-61; *People v. Mileris* (1981), 103 Ill. App. 3d 589, 431 N.E.2d 1064.

■ In the present case, defendant has shown a reasonable fear of self-incrimination based on a nexus between the civil matter and the pending criminal indictment. The indictment against defendant identifies Mr. Macke, the expert appointed by the Attorney General to re-

solve consumer complaints in out-of-court proceedings, as a "victim" of two counts of forgery.[1] In his motion to stay the civil proceedings, defendant indicated that Mr. Macke is a likely witness against him in the civil proceedings on return of the rules to show cause initiated by the Attorney General. Under the circumstances, the trial court was presented with ample evidence that a nexus existed between the proceedings for resolution of consumer complaints under the consent decree and defendant's pending criminal charges.

The Attorney General's further argument that the trial court did not possess actual copies of the indictment, and therefore could not properly determine the sufficiency of defendant's claim, is without merit. Defendant's motion stated that the indictment called for defendant to be arraigned on May 30, 1991, before the presiding judge of the Cook County criminal court. At the hearing, the Attorney General admitted that an indictment had issued and that Mr. Macke is a potential witness and victim in one matter. At this, the trial court sardonically mused, "What is the appropriate punishment for this fellow, torture?" The record reveals that the determinations of Mr. Macke form the entire basis of the rules to show cause issuing against defendant for violations of the consent decree. The trial court noted the significant difficulties the civil litigation would encounter were the parties to attempt to sort out which testimony Mr. Macke could give and which testimony could potentially violate defendant's constitutional rights. The trial court concluded that the prejudice to defendant under such circumstances outweighed the prejudice to those consumers allegedly harmed by defendant. We agree.

Accordingly, we conclude that the trial court properly granted a stay of all civil proceedings under the consent decree.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.

---

[1]The indictment was provided to this court as a supplement to the record on appeal.