NO. 4-01-0730

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JACKSONVILLE SAVINGS BANK, an Illinois Banking Corporation,

Plaintiff-Appellee,

v.

MARK KOVACK,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Morgan County

No. 01L31

Honorable

Ronald F. Robinson,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In July 2001, plaintiff, Jacksonville Savings Bank (Bank), filed a complaint against defendant, Mark Kovack, alleging that he had illegally received funds belonging to the Bank while employed there.  Later that month, Kovack filed a motion to stay the civil proceedings until a pending federal criminal investigation involving the same wrongful conduct was resolved.  Following an August 2001 hearing, the trial court denied Kovack's motion to stay the proceedings.

Kovack appeals, arguing only that the trial court abused its discretion by denying his motion to stay the civil proceedings.  We affirm.   

I. BACKGROUND

In July 2001, the Bank filed a four-count complaint against Kovack, the Bank's former assistant vice president, alleging that from 1995 through April 2001, Kovack engaged in  several wrongful activities to his personal benefit, including the following: (1) repeated diversions of checks and cash from the Bank's customers; (2) misapplication of loan proceeds; and (3) creation of "dummy" loans without the knowledge or consent of the affected customers.   

Later during July 2001, Kovack filed a motion to stay the civil proceedings, asserting that he was a suspect in a Federal Bureau of Investigation (FBI) criminal investigation involving the same wrongful conduct.  Kovack also filed an affidavit of his attorney, in which his attorney averred that (1) he had spoken with an assistant United States Attorney on several occasions, and based on those conversations, he believed that criminal charges were going to be filed against Kovack; and (2) Kovack intended to invoke his fifth amendment privilege against self-incrimination in the civil proceedings.   

In August 2001, the Bank filed a response to Kovack's motion to stay the proceedings, asserting, in pertinent part, that (1) federal prosecutors had not yet filed criminal charges against Kovack; (2) Kovack had not claimed that criminal charges were pending; (3) the Bank had suffered a financial loss between $2 and $3 million due to Kovack's wrongful conduct; and (4) if the trial court stayed the civil proceedings, Kovack might dissipate his assets, making the Bank's recovery of its lost funds impossible.  

Later during August 2001, the trial court conducted a hearing on Kovack's motion to stay the proceedings.  After considering counsel's arguments, the court denied the motion and stated, in pertinent part, as follows:

"[T]his [c]ourt does have authority to stay the proceedings in this case upon proper showing, and as I understand[,] that ruling is discretionary with the [c]ourt.  ***  It is a fact, as I understand it, that no criminal action is pending in this case.  None has been filed in any jurisdiction to my knowledge.  The affidavit indicates none has been filed.  [Kovack's counsel] did file [an] affidavit that it was his belief that charges would be filed.  That really doesn't help the [c]ourt.  ***  The fact is there are none filed and this [c]ourt must take that fact into consideration.  The [c]ourt is also concerned with the fact that [Kovack] has not asserted his fifth amendment right against self[-]incrimination to any specific request in this case.  All the affidavit, and that's all I have in the file, *** is an affidavit, again, [Kovack's counsel] indicating that his client intends at sometime to invoke his fifth amendment right to a privilege against self[-]incrimination.  That may well be.  But it is not asserted yet.  ***  There is a [c]omplaint on file and I understand that [Kovack] must at sometime choose how he wishes to respond to that [c]omplaint.  That can be in a variety of ways.  It can be a [m]otion to [d]ismiss.  It can be a denial.  There are any number of ways to answer a [c]omplaint.  But I think we need to proceed to that stage.  *** [Kovack's counsel has indicated] that his client intends at sometime to invoke that privilege.  ***  I am not sure when, if ever, he is going to invoke it.  So, I think we need to find out.  ***  I think until we see some facts a little closer to the case at hand, then I see no reason to prevent the plaintiff from pursuing [its] civil remedies and in trying to locate and recover [its] funds.  ***  [Kovack's] right against self[-]incrimination is paramount.  And I can assure you *** that upon proper assertion of that right, it will be supported and guaranteed.  But I think we need to look at, I think, it's a right and privilege he is going to have to affirmatively assert when he feels it's necessary.  ***  But I am not going to second[-]guess him as to when he is ever going to assert that, when he has not asserted that in the past and he had a perfect opportunity to.  He may not.  Let's find out down the road when there are specific requests and so forth as to when he wishes to assert that privilege.  I will review it and if it's properly asserted and he shows a reasonable nexus between a potential criminal conviction and the information requested, I will certainly back him up in his assertion of his fifth amendment rights ***.  But it's the [c]ourt's order and discretionary at this time to deny the [m]otion to [s]tay of these proceedings."   

This interlocutory appeal followed.   

II. THE TRIAL COURT'S DENIAL OF KOVACK'S 

MOTION TO STAY THE PROCEEDINGS

Kovack argues that the trial court abused its discretion by denying his motion to stay the civil proceedings against him.  Specifically, he contends that the court should have granted the stay because "he is unable to adequately defend himself in the pending civil proceeding while the criminal investigation is hanging over his head."  We disagree.  

The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  The fifth amendment does not, however, mandate a stay of civil proceedings pending the outcome of similar or parallel criminal proceedings.  See 
People ex rel. Hartigan v. Kafka & Sons Building & Supply Co.
, 252 Ill. App. 3d 115, 119, 625 N.E.2d 16, 19 (1993) ("Where a criminal action is simultaneously pending with a civil action, courts 
may
 stay the civil proceeding based on the fifth amendment until the resolution of the criminal matter" (emphasis added)); 
Keating v. Office of Thrift Supervision
, 45 F.3d 322, 324 (9th Cir. 1995) (the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings); 
Nowaczyk v. Matingas
, 146 F.R.D. 169, 174 (N.D. Ill. 1993) ("A stay of civil discovery is 
sometimes
 appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter" (emphasis added)).

Kovack claims that "he is completely hamstrung trying to defend himself" in the civil proceedings because he might incriminate himself in the pending criminal investigation.  However, Kovack's unenviable position does not deny him his fifth amendment right to remain silent.  As the Ninth Circuit Court of Appeals stated in 
Keating
:

"A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his [f]ifth [a]mendment privilege.  Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the [f]ifth [a]mendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the [f]ifth [a]mendment in a civil proceeding."  
Keating
, 45 F.3d at 326, citing 
Baxter v. Palmigiano
, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 821, 96 S. Ct. 1551, 1558 (1976) (noting the "prevailing rule that the [f]ifth [a]mendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").   

See also 
Securities & Exchange Comm'n v. Incendy
, 936 F. Supp. 952, 956 (S.D. Fla. 1996) (referring to 
Baxter
 and noting that the Constitution is not violated by forcing an individual to risk "non-criminal disadvantage" by remaining silent in civil proceedings out of fear that he will incriminate himself in a subsequent criminal action).  Similarly, in 
International Business Machines Corp. v. Brown
, 857 F. Supp. 1384, 1389 (C.D. Cal. 1994), the court discussed the difficult decision that must be made by a party facing simultaneous or successive civil and criminal trials:

"[T]he contention that being forced to choose between the compulsion to testify in a civil suit in order to avoid an adverse result on the merits undermines the right to remain silent in a criminal matter, while having surface appeal, will not stand analysis.  While the 'choice between testifying or invoking the [f]ifth [a]mendment may be difficult, *** it does not create the basis for a stay.'  [Citations.]"   

Notwithstanding the fact that no direct fifth amendment violation results from a trial court's refusal to stay civil proceedings, courts have enunciated several factors to be considered when determining whether to stay civil proceedings, including the following:  (1) the plaintiff's interest in an expeditious resolution of the civil case and any prejudice to the plaintiff in not proceeding; (2) the interests of and burdens on the defendant, including the extent to which the defendant's fifth amendment rights are implicated; (3) the convenience to the court in managing its docket and efficiently using judicial resources; (4) the interests of persons who are not parties to the civil proceeding; and (5) the interests of the public in the pending civil and criminal actions.  See 
Keating
, 45 F.3d at 324-25;  
Nowaczyk
, 146 F.R.D. at 174.  The decision whether to stay civil proceedings lies within the trial court's discretion.  
Cf.
 
United States v. Kordel
, 397 U.S. 1, 12 n.27, 25 L. Ed. 2d 1, 10 n.27, 90 S. Ct. 763, 770 n.27 (1970) (where the "interests of justice" so require); see also 
Vasa North Atlantic Insurance Co. v. Selcke
, 261 Ill. App. 3d 626, 628, 633 N.E.2d 865, 868 (1994). 

A. The Bank's Interests

The Bank has suffered a substantial financial loss, totaling between $2 and $3 million.  As the Bank points out, it has a right to proceed with its civil case against Kovack and seek recovery of its lost funds.  As earlier noted, parties who face contemporaneous civil litigation and criminal investigation face difficult choices.  At the same time, parties who claim to have been victimized by fraud or other crimes are entitled to pursue their civil remedies.  It would be perverse if plaintiffs who claim to be the victims of criminal activity were relegated to receive slower justice than other plaintiffs simply because the behavior they allege is egregious enough to attract the attention of criminal authorities.    

B. Kovack's Interests

Whether a party's fifth amendment rights are implicated is a significant factor for the trial court to consider in deciding whether to stay civil proceedings, "but it is only one consideration to be weighed against others."  
Federal Savings & Loan Insurance Corp. v. Molinaro
, 889 F.2d 899, 902-03 (9th Cir. 1989).  When issues in a criminal matter significantly overlap with those in the civil proceedings, self-incrimination is more likely.  
Trustees of the Plumbers & Pipefitters National Pension Fund v. Transworld Mechanical, Inc.
, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).  In this case, the parties agree that the wrongful conduct alleged in the civil complaint and the wrongful conduct that is the subject of the criminal investigation is the same.  Kovack's counsel has indicated that Kovack intends to invoke his fifth amendment privilege in the civil proceedings.  If and when Kovack does so, that limitation, though significant, will not bar him from taking the stand and asserting his fifth amendment rights as needed, while presenting a vigorous defense through cross-examination and other means available to him.

C. Convenience to the Trial Court

Regarding the convenience to the trial court, we note that Kovack merely asserted that he was the subject of a federal criminal investigation.  He had not yet been charged with a crime, and the record does not show that a criminal charge was pending.  Courts have indicated that an announced charge against a defendant weighs heavily in the defendant's favor in deciding whether to stay civil proceedings.  See 
Sterling National Bank v. A-1 Hotels International, Inc.
, No. 00Civ.7352, slip op. at 2 (S.D.N.Y. May 4, 2001) (citing cases).  However, a stay is not normally appropriate when a defendant has not been formally charged.  See 
Transworld Mechanical
, 886 F. Supp. at 1139 ("stays will generally not be granted before an indictment is issued").
  Because Kovack had not yet been charged in the criminal matter, it was not clear how long the civil proceedings would have to be stayed.  In effect, Kovack was seeking to delay the civil case indefinitely, with no predictability as to when the case could have returned to the trial court's active docket.  This would have burdened the court's ability to manage its cases. 

D. Private and Public Interests

Finally, the interests of nonparties and the public favored prompt resolution of the civil proceedings.  See 
Sterling National Bank
, No. 00Civ.7352, slip op. at 2, quoting 
Citibank, N.A. v. Hakim
, No. 92Civ.6233, slip op. at 3 (S.D.N.Y. 1993) ("'[T]he public interest in financial institutions['] promptly recovering misappropriated funds is significant, particularly when weighed against the interest in a merely conjectural criminal prosecution'").

Having reviewed the trial court's decision in light of the particular circumstances of this case and under the appropriate standard of review, we conclude that the court did not abuse its discretion by denying Kovack's motion to stay the civil proceedings.    

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.