# Illinois Official Reports

## Appellate Court

---

### *Davies v. Pasamba*, 2014 IL App (1st) 133551

---

| | |
|---|---|
| Appellate Court Caption | MARSHALL DAVIES, a Disabled Person, by Cook County Public Guardian Robert F. Harris, Plaintiff-Appellant, v. CARMELITA PASAMBA, EDGARDO PASAMBA, and JOCELYN BAKER, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3551 |
| Filed | August 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from defendants' abuse of their relationship as caregivers for plaintiff, a disabled person they met while he was hospitalized, the trial court abused its discretion in staying the recovery citation proceedings against defendants pending the resolution of the criminal cases against defendants, since extensive deposition testimony had already been provided by defendants in the citation proceedings, those admissions were already available for use against defendants in the criminal cases, the court's ability to manage its cases would suffer, and the prompt resolution of civil proceedings involving the misappropriation of money from the disabled elderly is favored. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-P-3699; the Hon. Daniel B. Malone, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and
Mary Brigid Hayes, of counsel), guardian *ad litem*.

No brief filed for appellees.

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the
court, with opinion.
Justices McBride and Palmer concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Marshall Davies, age 95, is a disabled person who suffers from dementia and, through the public guardian, seeks to recover money that he alleges was wrongfully taken from him by the defendants, Carmelita Pasamba, Edgardo Pasamba, and Jocelyn Baker. Carmelita Pasamba met Davies in 2007 when he was hospitalized due to hip pain at a hospital where she worked as a certified nursing assistant. After Davies was discharged from the hospital, he hired Carmelita to be his caregiver and she began working in that capacity; Carmelita obtained a power of attorney from Davies on April 24, 2008. Carmelita introduced Davies to her sister, Jocelyn Baker, a "CNA, a certified medical aide," who also helped as Davies' caregiver. Defendant Edgardo Pasamba is the husband to Carmelita and served as a driver for Davies.

¶ 2    Catholic Charities Older Adult Services, a nonprofit agency that receives and assesses reports of suspected abuse, neglect, or financial exploitation of adults age 60 or over in Illinois, received two reports of suspected financial exploitation of Davies by Carmelita.[1] Subsequently, on June 23, 2011, Catholic Charities petitioned for the appointment of a guardian for Davies, alleging that he has "severe dementia" and "has named an agent under power of attorney who has not been forthcoming with an accounting of her financial actions on behalf of Mr. Davies." On July 7, 2011, the probate court appointed the public guardian as temporary guardian of Davies.

¶ 3    On September 11, 2011, the public guardian filed a citation to discover assets under section 16-1 of the Probate Act of 1975 (755 ILCS 5/16-1 (West 2010))[2] against the

---

[1]Neither the parties who reported the suspected abuses nor the date Catholic Charities Older Adult Services received the reports appears in the record on appeal.

[2]Section 16-1 of the Probate Act provides that "the court shall order a citation to issue for the appearance before it of any person whom the petitioner believes (1) to have concealed, converted or embezzled or to have in his possession or control any personal property, books of account, papers or evidences of debt or title to lands which belonged to a person whose estate is being administered in that court or which belongs to his estate or to his representative or (2) to have information or knowledge withheld by the respondent from the representative and needed by the representative for the recovery of any property by suit or otherwise." 755 ILCS 5/16-1(a) (West 2010).

Pasamba family, including the three defendants in the case at bar; Carmelita's supervisor at the hospital where she works; the attorney who prepared Davies' power of attorney and will and trust documents; and the health care organization operating the hospital. The public guardian deposed defendants Carmelita, Edgardo, and Jocelyn, none of whom invoked their privilege against self-incrimination during the deposition. On April 26, 2012, the public guardian filed a citation to recover assets under section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2010)) against the Pasamba family, the attorney, and the hospital.

¶ 4    In April of 2013, a Cook County grand jury indicted defendants on criminal charges for theft and financial exploitation of Davies and also indicted Carmelita for forgery of a doctor's note on Davies' mental condition. On June 26, 2013, defendants moved to stay the citation to recover assets in the instant case until their pending criminal cases were resolved. They claimed that if the court allowed the citation proceedings to proceed, they would violate their fifth amendment privilege against self-incrimination.

¶ 5    On August 21, 2013, the probate division of the circuit court of Cook County granted a stay of the recovery citation proceedings with respect to defendants; the citation proceedings against the other members of the Pasamba family, the attorney, and the hospital were not stayed. The public guardian moved to reconsider and that motion was denied. On November 15, 2013, the public guardian filed a notice of interlocutory appeal before the appellate court under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), seeking reversal of the orders denying the public guardian's motions to reconsider and to lift the stay. For the reasons that follow, we reverse and remand.

¶ 6                                 BACKGROUND
¶ 7                            I. Adjudicated Disabled
¶ 8    Catholic Charities Older Adult Services, a nonprofit agency that evaluates reports of suspected abuse, neglect, or financial exploitation of adults age 60 or over in Illinois, received two reports of suspected financial exploitation of Davies by Carmelita, whom he hired as caregiver in 2007 after his discharge from the hospital. On June 23, 2011, Catholic Charities petitioned for the appointment of a guardian for Davies, alleging that he has "severe dementia" and "has named an agent under power of attorney who has not been forthcoming with an accounting of her financial actions on behalf of Mr. Davies." On July 7, 2011, the probate court appointed the public guardian as temporary guardian of Davies. On October 12, 2011, the probate court found Davies incompetent and appointed the public guardian as plenary guardian of his estate and person.

¶ 9                     II. Petition for a Citation to Discover Assets
¶ 10    On September 11, 2011, the public guardian filed a petition for a citation to discover assets. The public guardian also filed a temporary restraining order and a preliminary injunction pursuant to section 11-101 of the Code of Civil Procedure (735 ILCS 5/11-101 (West 2010)) to protect Davies' assets from Carmelita, which the court entered on September 15, 2011, and on September 26, 2011, respectively. According to Carmelita's accounting, provided to the probate court on a motion to vacate the temporary restraining order, Carmelita, her sister Jocelyn, and her son Dennis withdrew $112,381.58 for loans from Davies' accounts in 2008. Carmelita also testified at the hearing on the motion to vacate that

she withdrew $9,425.21 in 2009 and $24,000 in 2010 of Davies' money for loans to herself and other family members but did not pay the money back.

¶ 11　Next, the public guardian deposed Carmelita, Edgardo, and Jocelyn, who did not assert their fifth amendment right to refuse to answer questions that could incriminate them.

## A. Carmelita

¶ 13　Carmelita testified that she met Davies in 2007 when he was a patient at the hospital where she worked as a certified nursing assistant. After his discharge, she and Jocelyn started working as caregivers for Davies.

¶ 14　Carmelita testified that Davies requested that she have his power of attorney and desired to execute a new will with a trust. She introduced Davies to Alfonso Bascos, an attorney, in April of 2008. Bascos prepared the power of attorney and will and trust documents, which Davies signed on April 24, 2008, and April 27, 2008, respectively. Carmelita believed that Davies was "competent" at that time, but Bascos was concerned about Davies' level of alertness. Consequently, Carmelita asked Dr. Simovic[3] to write a note stating that Davies was competent. Dr. Simovic provided her with the note on April 30, 2008, which she gave to Bascos.

¶ 15　Davies' previous will had devised most of his estate to the Salvation Army; however, the new pour-over will transferred Davies' assets to a new trust and devised $50,000 to the Salvation Army, $100,000 to Carmelita, and $25,000 each to her daughter Donabel, her husband Edgardo, and her sister Jocelyn. The new will also designated Edgardo as executor.

¶ 16　Carmelita testified that she received $50,000 a year as a salary for her duties under the power of attorney for Davies, and she received a $50,000 bonus for assisting him in selling his condominium in 2008. In addition, Davies gave her a $30,000 loan for home repairs on May 8, 2008, and Davies loaned her money to pay him back when she could.

¶ 17　Carmelita testified that Edgardo served as Davies' driver but was paid "maybe three times" and received "like $500." Dennis, her son, also received a $15,000 loan from Davies but never paid any money back; Dennis received a $5,000 check on October 15, 2008, a $5,000 check on October 22, 2008, and a $5,000 check on May 20, 2010. One of the three checks was an "accidental check" Carmelita thought she wrote from her own account instead of Davies' account but she did not correct her mistake.

## B. Edgardo

¶ 19　In Edgardo's discovery deposition, he testified that he served as Davies' driver but did not receive a salary. However, he occasionally received money for driving Davies, and he received a 2000 Buick that he did not pay for from Davies in 2008. Edgardo knew Carmelita received money to remodel their house but he was unsure where it came from or how much she received.

---

[3]Dr. Simovic's first name does not appear in the record on appeal.

## C. Jocelyn

In Jocelyn's discovery deposition, she testified that she first noticed signs of Davies' dementia in 2009. She obtained three loans from Davies: $10,000 on May 11, 2008; $15,000 on July 19, 2008; and $8,000 on September 22, 2008, to repair her house. In January of 2011, she began repaying Davies $100 a month. She had agreed to pay more monthly but did not have enough money.

## III. Citation to Recover Assets

On April 26, 2012, the public guardian filed a citation to recover assets under section 16-1 of the Probate Act (755 ILCS 5/16-1 (West 2010)) against Carmelita, Edgardo, and Jocelyn; Carmelita's son Dennis and daughter Donabel; attorney Bascos; and the hospital. The public guardian alleged that the Pasamba family wrongfully appropriated over $536,682 of Davies' assets between 2008 and 2011 and asked the court to award Davies $536,682 in damages. The public guardian alleged that Davies was "severely demented and incapable of entering into contracts or making financial transactions at the time he purportedly executed a power of attorney to Carmelita Pasamba on April 24, 2008," based on an examination and evaluation of Davies by a licensed psychiatrist, Dr. Geoffrey Shaw.

## IV. Criminal Charges

In April of 2013, a Cook County grand jury indicted Carmelita, Edgardo, and Jocelyn for theft and financial exploitation of Davies and also indicted Carmelita for forgery. The forgery indictment charged that Carmelita prepared a medical note and claimed it was from Dr. Simovic.

## V. Motion to Stay

On June 26, 2013, Carmelita, Edgardo, and Jocelyn moved to stay the recovery citation proceedings pending the outcome of their criminal trial. They claimed that if the court allowed the citation proceedings to proceed, they would violate their fifth amendment privilege against self-incrimination. They also claimed that they are unable to compensate Davies if judgment was entered against them.

## VI. Stay

On August 21, 2013, the probate court granted a stay based on the following factors: (1) the posture of the criminal case, (2) the extent to which defendants' fifth amendment rights are implicated, (3) the public interest, (4) the plaintiff's interest in prompt resolution of the civil proceeding, (5) the overlap in subject matter of the criminal and civil proceedings, and (6) the government's involvement as a party in the criminal and civil cases.

The probate court found that five out of six legal factors favored a stay. First, defendants risk compromising their criminal case if a stay is denied because the criminal indictment and the recovery citation contain similar subject matter. Second, the issues in the criminal and civil cases overlap and, therefore, self-incrimination is more likely. Third, no significant public harm would occur if the stay was issued. Fourth, Davies' interest in prompt resolution of the civil proceeding weighs against a stay but the delay will not financially prejudice him

due to his settlement funds from the hospital.[4] Fifth, the defendants' conduct in both cases is identical and, therefore, the subject matter in the criminal and civil proceedings overlap. Sixth, two government offices brought the criminal and civil cases against defendants.

¶ 31    The probate court granted the stay, although the citation proceedings against Carmelita's son Dennis, her daughter Donabel, attorney Bascos, and St. Joseph Hospital were not stayed. The public guardian moved to reconsider and that motion was denied. On November 15, 2013, the public guardian filed a notice of interlocutory appeal as a matter of right under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 210), seeking reversal of the orders denying the public guardian's motions to reconsider and to lift the stay. "[A] motion requesting a court to stay its own proceedings pending resolution of a related case is in effect a request for an injunction, and a decision either granting or denying such a motion is immediately appealable under Rule 307(a)(1)." *Disciplined Investment Advisors, Inc. v. Schweihs*, 272 Ill. App. 3d 681, 691 (1995). As a result, this court has jurisdiction over Davies' interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010). This appeal follows.

¶ 32                                    ANALYSIS

¶ 33    On appeal, the public guardian challenges the probate court's issuance of a stay of the recovery citation proceedings. The public guardian argues that the probate court erroneously issued a stay because (1) the privilege against self-incrimination does not protect information previously disclosed under oath, (2) the stay unfairly prevents the public guardian from using defendants' admissions to establish fraud, and (3) the probate court abused its discretion in entering a stay of the recovery citation proceedings.

¶ 34    Defendants have not filed a brief, so the instant appeal is taken for consideration on the record and Davies' brief only. *In re Petition of Howard*, 343 Ill. App. 3d 1201, 1204 (2003).

¶ 35                              I. Standard of Review

¶ 36     The entry of a stay maintains the case in its existing state without ruling on the dispute between the parties (*Kaden v. Pucinski*, 263 Ill. App. 3d 611, 615 (1994)), and it is within the probate court's discretion (*Jacksonville Savings Bank v. Kovack*, 326 Ill. App. 3d 1131, 1136 (2002)). When a criminal action is pending during the course of a civil action, a court can stay the civil action to protect a party's right against self-incrimination. *People ex rel. Hartigan v. Kafka & Sons Building & Supply Co.*, 252 Ill. App. 3d 115, 119 (1993). However, the party moving for a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991).

¶ 37    When evaluating whether to stay a civil suit to prevent compulsory self-incrimination, this court applies the abuse of discretion standard of review. *Jacksonville Savings Bank*, 326 Ill. App. 3d at 1137. An abuse of discretion occurs when "the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 26.

---

[4]On July 30, 2013, the court approved a settlement agreement between Davies and the hospital and dismissed the hospital as a respondent in the proceedings.

## II. The Fifth Amendment Right

The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The fifth amendment does not, however, mandate a stay of civil proceedings pending the outcome of similar or parallel criminal proceedings. See *People ex rel. Hartigan v. Kafka & Sons Building & Supply Co.*, 252 Ill. App. 3d 115, 119 (1993) ("Where a criminal action is simultaneously pending with a civil action, courts *may* stay the civil proceeding based on the fifth amendment until the resolution of the criminal matter." (Emphasis added.)); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D. Ill. 1993) ("A stay of civil discovery is *sometimes* appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter." (Emphasis added.)).

However, this is not a case where the defendants are completely hamstrung trying to defend themselves in a civil proceeding because they might incriminate themselves in a pending criminal investigation or case. Here, defendants have already shown through their deposition testimony, where they did not invoke their fifth amendment rights, that they took advantage of the plaintiff, who suffers from dementia. The information that they already provided in the civil case caused their criminal indictment.

## III. Previously Disclosed Information

The public guardian argues that the privilege against self-incrimination does not protect previously disclosed information and, therefore, the public guardian is entitled to use defendants' discovery deposition testimony in the recovery citation proceedings. "A party who chooses to testify in a civil case in spite of the risk that a prosecutor later might seek to use his statements against him in a criminal prosecution involving the same subject matter is hard put to complain about the subsequent denial of a stay." *Microfinancial, Inc. v. Premier Holidays International, Inc.*, 385 F.3d 72, 78-79 (1st Cir. 2004).

For instance, in *Microfinancial*, *Inc.*, even though one defendant had already given extensive deposition testimony, the defendants moved to stay their civil case, claiming that they were subjects of a grand jury investigation that was related to the plaintiff's civil claims. *Microfinancial*, *Inc.*, 385 F.3d at 76-78. The court found that there was no need to stay the civil proceedings because one defendant had already given extensive testimony and, therefore, a stay would not significantly burden the defendants' fifth amendment rights. *Microfinancial, Inc.*, 385 F.3d at 78. The court reasoned that "[b]y failing to invoke his Fifth Amendment privilege, [the defendant] likely waived the privilege with respect to the subject matter of his deposition testimony for the duration of the proceeding in which that testimony was given." *Microfinancial, Inc.*, 385 F.3d at 78.

The fifth amendment right against self-incrimination does not apply to the testimony already given in the instant case. Like *Microfinancial, Inc.*, this case involves defendants who answered questions without asserting their right against self-incrimination and gave extensive testimony in their depositions and, in Carmelita's case, before the probate court. According to Carmelita's accounting, Carmelita, her sister Jocelyn, and her son Dennis withdrew

$112,381.58 in loans from Davies in 2008. Carmelita received $9,425.21 in loans in 2009 and $24,000 in 2010. She received a $50,000 bonus for assisting Davies in selling his condominium in 2008 and a $30,000 loan for home repairs on May 8, 2008. Edgardo testified that he occasionally received money for driving Davies, and he was given a 2000 Buick by Davies. Jocelyn testified that she received three loans of $10,000, $15,000, and $8,000 to repair her house from Davies. Defendants cannot use a stay to "preserve what [the party] already has surrendered" in the civil case. *Microfinancial, Inc.*, 385 F.3d at 79.

¶ 45 Thus, the previously disclosed information could not provide a basis for staying the recovery citation proceedings.

¶ 46                             IV. Use of Defendants' Testimony to Prove Fraud

¶ 47 Additionally, the public guardian argues that a stay of civil proceedings unfairly prevents the public guardian from using defendants' deposition testimony to establish fraud.

¶ 48 In *Cardiel v. Warren*, 191 Ill. App. 3d 816, 821 (1989), the court found that it was proper to admit into evidence a defendant's answers to interrogatories and answers to questions in a pretrial oral deposition. The court reasoned that "answers given in discovery depositions may be used as admissions made by a party *** in the same manner and to the same extent as any other admission made by that person" and "when relevant to issues in the case, admissions by a party are admissible as substantive evidence of the truth of the statements made or of the existence of any facts which they have a tendency to establish." *Cardiel*, 191 Ill. App. 3d at 821.

¶ 49 Like the defendant in *Cardiel*, Carmelita admitted to making transactions to benefit herself and her family after obtaining a power of attorney from Davies. For example, during the time Carmelita acted under the power of attorney, she received a $30,000 loan for home repairs, her sister Jocelyn received a $33,000 loan for home repairs, and her son Dennis received a $15,000 loan from Davies. "A power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law" and "the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent." *White v. Raines*, 215 Ill. App. 3d 49, 59 (1991). Due to defendants' extensive deposition testimony, the public guardian has evidence to establish the fraud. Therefore, we agree with Davies that the stay prevents the public guardian from using defendants' deposition testimony to prove fraud.

¶ 50                                 V. The Trial Court's Decision

¶ 51 The trial court considered six factors in its decision-making process in granting the stay. However, these factors need not be considered when defendants have already given their testimony in extensive depositions because again, the fifth amendment right against self-incrimination does not apply to testimony already given.

¶ 52 Ordinarily, a court will consider certain factors before a defendant has testified or provided evidence of his wrongful conduct in determining whether a stay should be granted when a civil proceeding is pending and there is a criminal investigation pending or likely to occur. *United States v. Kordel*, 397 U.S. 1 (1970). Those factors include: (1) the plaintiff's interest in an expeditious resolution of the civil case and any prejudice to the plaintiff in not proceeding; (2) the interests of and burdens on the defendant, including the extent to which

defendant's fifth amendment rights are implicated; (3) the convenience to the court in managing its docket and efficiently using judicial resources; (4) the interests of persons who are not parties to the civil proceeding; and (5) the interests of the public in the pending civil and criminal actions. *Jacksonville Savings Bank v. Kovack*, 326 Ill. App. 3d 1131, 1136 (2002); *Keating*, 45 F.3d at 324-25; *Nowaczyk*, 146 F.R.D. at 174.

¶ 53 However, even if a court considers these factors under all circumstances where a defendant claims a fifth amendment right against self-incrimination, none of these factors would favor the defendants here.

## A. The Plaintiff's Interests

¶ 55 The 95-year-old plaintiff here suffered a substantial financial loss and has a right to proceed with his civil case against the defendants and such recovery of his lost funds during his lifetime. People who claim to have been victimized by fraud or other crimes are entitled to pursue their civil remedies. They should not be required to receive slower justice simply because the conduct they allege is egregious enough to attract the attention of criminal authorities.

## B. The Defendants' Interests

¶ 57 The defendants have already given extensive deposition testimony that they cannot take back. They have waived their privilege against self-incrimination. The admissions that have been made were significant and a stay of the proceedings will be of no or limited benefit in the criminal proceedings because their admissions can and will be used against them.

## C. Convenience to the Trial Court

¶ 59 A stay would burden the court's ability to manage its cases and an indefinite delay could cause the court to be in the position of waiting until the defendants serve their jail sentences in the event that they are convicted and sentenced to a period of incarceration.

## D. Private and Public Interests

¶ 61 Finally, the interests of nonparties and the public favor prompt resolution of civil proceedings, especially promptly recovering misappropriated funds by people in a fiduciary relationship who manipulate the elderly, particularly when weighed against the interest in a merely conjectural criminal prosecution.

## CONCLUSION

¶ 63 Having reviewed the trial court's decision in light of the particular circumstances of this case, we conclude that the trial court's ruling is unreasonable and as a result, the trial court abused its discretion in granting defendants' motion to stay the civil proceedings.

¶ 64 Reversed and remanded.