**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 210095-U

Order filed December 29, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THOMAS J. FREDERICK, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal Nos. 3-21-0095 |
| | ) | 3-21-0104 |
| TERRY L. GACA, and JANET L. WAYMAN, | ) | Circuit Nos. 19-CH-1237 |
| Individually and as Trustee of the Janet L. | ) | 20-CC-7 |
| Wayman Trust, | ) | |
| | ) | Honorable Theodore J. Jarz, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice McDade and Justice Lytton concurred in the judgment.

**ORDER**

¶ 1     *Held*:  This court lacks jurisdiction to consider an appeal from the denial of a
             discovery motion for additional disclosures. The trial court did not err when
             it denied plaintiff's motion to lift the stay of the civil proceedings.

¶ 2     This consolidated interlocutory appeal involves an order staying the proceedings in a civil

action brought by plaintiff, Thomas Frederick, against defendants, Terry L. Gaca, and Janet

Wayman, individually and as trustee of the Janet L. Wayman Trust. Frederick appeals, arguing the

trial court erred in staying the civil proceedings. The civil action resulted in Frederick filing a

petition for adjudication of indirect criminal contempt against defendant Gaca. Frederick also appeals an order denying his motion for additional disclosures in the contempt proceedings. We dismiss the appeal in part, affirm in part, and remand for further proceedings.

¶ 3                                               I. BACKGROUND

¶ 4        On August 26, 2019, Frederick filed a multicount complaint against defendants, Terry Gaca and Janet Wayman, individually and as trustee of the Janet L. Wayman Trust. Count I alleged public nuisance. Count II alleged conspiracy to create a public nuisance. The remaining counts alleged various violations of the city of Naperville Zoning Ordinance, including operating a boarding house (counts III, IV); operating a parking and storage facility (counts V, VI), storing trucks in excess of the allowable weight and at unlawful times (counts VII, VIII); parking a trailer (count IX); not using required hard surface for the standing, loading, and unloading motor vehicles (count X); and parking unlicensed vehicles on the property (count XI). All counts concerned residential property owned by the trust on Lisson Road in Naperville and located next door to Frederick's house. The complaint sought preliminary and permanent injunctive relief as well as attorney fees and costs.

¶ 5        Frederick sought a preliminary injunction to enjoin the defendants from using the property for vehicle parking and storage. A hearing took place on the motion for injunctive relief on November 19, 2019.

¶ 6        Michael Menichini testified. He was a special process server who unsuccessfully attempted to serve various documents at the property four times. He observed approximately 20 vehicles parked on the property, including cars, pickup trucks, delivery trucks, and a heavy-duty work truck. On two visits, he counted 23 vehicles. The surface on which the vehicles were parked looked like packed dirt and crushed materials.

¶ 7    Janet Wayman testified. She lived on the property at issue with Gaca, her husband, from 1996 to late October 2018. The house had six bedrooms. Six people were currently living in the house and two others had lived there previously. Each tenant had a vehicle. She acknowledged there were more than 15 vehicles parked and stored on the property, and there were box trucks parked there for several months. The property was not used for storage, but people did pay to park there. She was aware people were paying to park. She did not formally authorize Gaca to use the property as a parking facility and would not have authorized the use if she had known it was in violation of the zoning ordinance. The Terry L. Gaca Trust now owned the property, which was transferred from her trust the week prior to the hearing. The transfer was made to balance the value of their trusts. She was not involved in her husband's business.

¶ 8    Gaca testified. He lived at the Lisson house until December 2018. He had paying tenants beginning in January 2019. In total, six people lived in the house and two other people had previously lived there. There was one vehicle per tenant. He accepted payment for parking and storage of nontenant-owned vehicles on the property beginning in February 2019. There were approximately 24 to 26 vehicles there in November 2019 and other vehicles had been parked there but were no longer on the property. The driveway was crushed asphalt and the vehicles were at all times parked on the asphalt. He denied he placed an ad on Craigslist that counsel downloaded on November 11, 2019, regarding renting parking space at the property. To his recollection, he did not authorize an ad on Spacer, also downloaded on November 11, 2019. Gaca explained he placed ads on Craigslist many times for parking and did not know when he stopped. On cross-examination, Gaca stated that the property was a shared home with six tenants and an oral lease. The rent included parking and utilities. He did not believe the use was in violation of any local ordinances.

¶ 9        Frederick testified. He offered his interpretation of the Naperville zoning ordinances and opined that the defendants violated the ordinances by housing individuals who were not a family in a single-family dwelling and by operating a parking facility, which was also not a permitted use under the local ordinances.

¶ 10       The trial court found that parking for hire was not a permitted use for the property and allowable parking was only by the tenants as accessory to their living in the house. The court described the zoning violations as "willful" and "crafty." The trial court rejected an interpretation that a single-family dwelling meant only a single family could live on the property. The court also rejected Frederick's claim that the defendants were running the parking operation as a home business. It granted Frederick's motion for a preliminary injunction and ordered the defendants to remove the vehicles on the property except those belonging to Gaca, Wayman, the trust, or the tenants.

¶ 11       On January 2, 2020, attorney Sean Sullivan appeared as substitute counsel for defendants.

¶ 12       On January 27, 2020, Sullivan filed an emergency motion to withdraw. The motion cited a total breakdown in communication between Sullivan and defendants, which rendered it impossible to file responses in good faith pursuant to the court-ordered deadline.

¶ 13       On January 28, 2020, Sullivan's colleague appeared at a hearing before Judge Jarz. Counsel informed the court that:

> "[r]ecent interactions with the client culminated in a six-page e-mail from the client on Sunday making it clear that the client did absolutely insist on a course of action that the attorney here, the lead attorney here, has a fundamental disagreement, feels that he cannot pursue on behalf of the client.

- 4 -

The reason that it's an emergency is that there are responses to discovery and outstanding pleadings due on the 31st. And this has fractured the attorney-client relationship such that we're really in a bind as to what can be done for this client, so we needed to come in as quickly as possible to bring this before your Honor"

The court allowed the motion and provided defendants 21 days to obtain counsel. However, the court maintained the deadlines established in the case. Defendants had to respond to Frederick's motion for partial summary judgment, answer the complaint, and respond to outstanding discovery by January 31, 2020.

¶ 14 On January 29, 2020, Joseph Nichele, of Broida and Nichele, Ltd., filed an appearance on behalf of defendants.

¶ 15 Defendants did not file an answer to the complaint, respond to discovery, or respond to Frederick's motion for partial summary judgment by the January 31, 2020, deadline.

¶ 16 On February 24, 2020, defendants filed a motion to dismiss the complaint and to dissolve the preliminary injunction as moot. The motion claimed that the Lisson property was not currently used as a boarding house but, instead, it had two boarding rooms in compliance with the municipal code. Attached to the motion was Gaca's affidavit attesting he moved back into the Lisson property on January 16, 2020. He averred that he lived in the home as the owner occupier with only two renters (August Brooks and Jeffrey Byron). Gaca stated that all other prior occupants—including Sean Sealy—had moved out of the home.

¶ 17 On February 26, 2020, Judge Jarz denied defendants' motion to dismiss the complaint and dissolve the preliminary injunction. Judge Jarz granted Frederick's motion for partial summary judgment (counts III through VI, VIII, XI, home occupations violations) and entered a permanent

injunction enjoining the defendants from operating a boarding house or a parking or storage facility or engaging in unlawful home occupations. Judge Jarz found issues of fact remained regarding the public nuisance and conspiracy to commit public nuisance counts (counts I, II).

¶ 18 On March 11, 2020, Frederick moved for the entry of an order of default against defendants as to the remaining claims for public nuisance and conspiracy to create a public nuisance. Frederick's motion sought a default against defendants as a sanction for repeated violations of court order requiring them to respond to Frederick's interrogatories and document production requests. Frederick contended that defendants' responses to discovery were provided after the court-ordered deadline and deficient on their face. Additionally, Frederick sought a finding of an adverse inference against defendants in all future proceedings based on their failure to produce information requested by Frederick in discovery. Frederick also asked to prohibit defendants from offering evidence in all future proceedings as to any issues covered by Frederick's discovery requests. Alternatively, Frederick sought an order requiring defendants to respond to Frederick's discovery requests.

¶ 19 On March 18, 2020, Frederick moved for attorney fees. The same day, Frederick filed a motion for sanctions against Gaca. The motion sought monetary sanctions for raising frivolous defenses in support of Gaca's motion to dismiss. Alternatively, Frederick asked the court to order defendants to produce all documents relating to payments made by tenants residing at the Lisson property or using the property for parking or storage. Frederick also asked the court to hold an evidentiary hearing at which defendants would be ordered to testify concerning such payments. Frederick sought a monetary sanction in the amount of the gain defendants received from the unlawful operation of the Lisson property.

¶ 20    On March 25, 2020, defendants filed an interlocutory appeal from the order denying their motion to dismiss and granting Frederick's motion for partial summary judgment. On appeal, defendants argued—among other things—that Gaca lived in the home with only two other individuals. Defendants claimed that this complied with the municipal code and the trial court should have granted defendants' motion to dismiss and denied Frederick's motion for partial summary judgment.

¶ 21    While defendants' appeal remained pending, Frederick filed a motion to supplement the record in the trial court to support his motions for an order of default and for sanctions on June 9, 2020. The motion alleged that Gaca attempted to perpetrate fraud on the court. The motion contained the sworn statement of Sealy. Sealy stated that Gaca's affidavit contained false statements, including that Sealy "no longer reside[d]" at the Lisson property, and "[c]urrently occupants of the Lisson property besides [Gaca], as owner, are August Brooks and Jeffrey Byron as tenants." Sealy averred that Gaca's statement that Sealy no longer lived at the property was false. Sealy stated that he was still residing at the property as the date of his sworn statement (June 1, 2020) and had done so continuously since April 4, 2019.

¶ 22    On June 11, 2020, defendants' attorney, Joseph Nichele, filed a motion to withdraw.

¶ 23    On June 12, 2020, Judge Jarz granted Frederick's motion for leave to supplement the record. Judge Jarz continued Frederick's pending motions for default, attorney fees, and other sanctions.

¶ 24    On June 22, 2020, Frederick filed a petition for adjudication of criminal contempt against defendant Gaca. The petition alleged that Gaca perpetrated fraud on the court by knowingly filing false affidavits indicating that Sean Sealy no longer lived at the Lisson property.

¶ 25    On June 25, Judge Jarz granted Nichele's motion to withdraw as counsel for defendants. Judge Jarz allowed attorney Dann Duff to file an appearance on behalf of defendants. Judge Jarz entered an order continuing Frederick's pending motions until this court decided defendants' appeal. Judge Jarz transferred the proceedings on Frederick's petition to adjudicate criminal contempt to Judge Carlson in the criminal division. Judge Jarz also appointed plaintiff's attorneys Bryan Kopman and Jeffrey Archambeault of Kavanagh, Grumley & Gorbold, LLC, to prosecute the petition for adjudication of criminal contempt.

¶ 26    On July 7, 2020, Frederick filed a motion for leave to serve discovery requests on Gaca in the civil action. Relevant to this appeal is Frederick's request to serve Gaca with a second set of requests for admission. Frederick claimed the "majority of the requests for admission simply seek to confirm that the numerous false and misleading statements made or caused to be made by Defendant Gaca that Sean Sealy no longer resided at the Lisson Property were made knowingly and for the purpose of falsely arguing that Defendant Gaca was no longer operating a boarding house at the Lisson Property[.]" Frederick argued that if Gaca asserted his fifth amendment privilege against self-incrimination in response to the requests to admit, then Gaca's invocation of the privilege would support the entry of both summary judgment and default judgment against Gaca.

¶ 27    On August 5, 2020, counsel for Frederick appeared before Judge Carlson regarding the petition for adjudication of criminal contempt. After discussing how the criminal matter would proceed, Judge Carlson stated,

> "Judge Jarz may not like it, but I'm going to stay all proceedings in that matter until we figure out what's going on because obviously there are Fifth

Amendment issues, there are all sorts of things. So I will issue a stay on all matters in that or all issues in that matter."

Judge Carlson added, "I will reach out to Judge Jarz and until we figure out what we are doing with this I'm entering an order staying those proceedings to protect everybody's due process rights."

¶ 28        On August 6, 2020, Judge Jarz entered an agreed order staying all proceedings in the civil case pursuant to the order entered by Judge Carlson.

¶ 29        On August 13, 2020, attorney Duff moved to withdraw as counsel for defendants.

¶ 30        On August 21, 2020, the parties appeared before Judge Carlson regarding the contempt proceedings.[1] After discussing logistics, Judge Carlson noted,

> "I did talk to Judge Jarz about the stay that I put in place. He was concerned because there is an issue with one of the attorneys [withdrawing].
>
> ***
>
> I told Judge Jarz I have no problem with that. I mean that's a procedural matter. I am simply here to protect Mr. Gaca's Fifth Amendment rights. So that's why I imposed a stay. I think Judge Jarz is clear on that order. So quite frankly I guess what I'm going to do now is I'm going to tell you one thing. There are to be no discussions about the civil case during the pendency of this.
>
> ***

---

[1]Attorney Donald DeWilkins appeared on behalf of defendants in the criminal case. He eventually withdrew as counsel for defendants.

I want to make it crystal clear, because you're asking for something quite serious. I understand the allegations quite frankly are disturbing, at least as far as the process and lawyers go. So I want to make sure that everybody is on board and understands that we are [taking] this very, very seriously and this is not going to be sort of a tool to resolve some civil dispute.

\*\*\*

So with that being said, what I'm going to do is I am going to put Mr. Gaca on a 25 thousand personal recognizance bond."

¶ 31    On August 25, 2020, Judge Jarz granted attorney Dann Duff's motion to withdraw as counsel for defendants.

¶ 32    On October 23, 2020, this court issued its opinion in defendants' appeal. This court affirmed the court's order granting partial summary judgment in favor of plaintiff. See *Frederick v. Gaca*, 2020 IL App (3d) 200154. We rejected defendants' argument that the trial court erred in granting Frederick's motion for partial summary judgment and entering a permanent injunction prohibiting defendants' from operating their home as a boarding house. This court rejected defendants' "claim that the house was now occupied by Gaca as owner and two individuals to whom he rented boarding rooms, which they claim[ed] was a lawful use under the zoning ordinance." *Id.* ¶ 37. We held, "[t]his conduct suggests that the defendants will continue to use the property, including renting rooms, based on an incorrect interpretation of the zoning ordinances." *Id.* This court added:

"As evidenced by the defendants' transformation of the boarding or 'shared' house to an owner/occupied residence with merely two boarders renting

rooms, it seems likely the defendants will continue to operate the property based on an incorrect interpretation of the zoning ordinances. The harm of likely repeated violations makes damages 'difficult or impossible' to measure. No available remedy would relieve Frederick of the defendants' wrongful use of the property neighboring his property." *Id*. ¶ 38.

This court's mandate did not issue until December 7, 2020.

¶ 33    On November 10, 2020, Judge Carlson allowed attorney Jordan Kielan to file his appearance on behalf of defendants. At the hearing, Judge Carlson denied plaintiff's motion to modify defendant Gaca's bond to require Gaca to comply with the permanent injunction. Judge Carlson explained the reason for the stay:

> "What I did was quite frankly to make it at least more manageable, is to stay all proceedings in the civil case so that we can figure out what it is that is going on and what—quite frankly, what the contempt is. And so I figured the best way to do this is to have it in one place, a one-stop shop for lack of a better way of describing it."

¶ 34    On December 9, 2020, the city of Naperville filed a petition to intervene in the civil action against defendants.

¶ 35    On December 15, 2020, Frederick filed a motion asking Judge Carlson to vacate the orders imposing a stay of the civil proceedings and requiring any motions for injunctive relief or to enforce the permanent injunction in the civil case to be brought before Judge Carlson. Frederick argued that Judge Carlson lacked jurisdiction to impose a stay over the civil proceedings. Additionally, Frederick argued that a stay was not warranted in the civil case.

- 11 -

¶ 36    On January 12, 2021, the parties appeared before Judge Carlson on plaintiff's motion to vacate Judge Carlson's orders staying the proceedings in the underlying civil matter. After hearing arguments, the court took the matter under advisement.

¶ 37    On January 15, 2021, Frederick filed a motion for leave to file a second amended petition for adjudication of criminal contempt. The motion sought to

> "simplify this criminal contempt case by essentially reducing it to a single question for trial. Did Respondent act *willfully* when he falsely stated and caused others to falsely state in affidavits that only three individuals— Respondent, August Brooks ("Brooks"), and Jeffrey Byron ("Byron")— were occupying or residing at 2401 Lisson Road in Naperville, Illinois *** in affidavits that Respondent filed in *Frederick v Gaca*, No 19 1237 *** on February 24, 2020?"

The motion added, "In addition to simplifying the charges against Respondent, the proposed Second Amended Petition would make clear there is no overlap whatsoever between these charges and the issues remaining to be determined in the Underlying Action." Additionally, Frederick argued, "the stay in the Underlying Action should be lifted. Respondent's Fifth Amendment rights will not be jeopardized by further proceedings on the Petitioner's remaining claims and the City of Naperville's proposed claims, which have nothing to do with the single, narrow issue presented in this criminal contempt proceedings."

¶ 38    On February 5, 2021, Frederick filed a motion for additional disclosures pursuant to Illinois Supreme Court Rule 413(e) (eff. July 1, 1982). Frederick sought the disclosure of "any communications, whether oral or written, including without limitation statements, memoranda, emails, and notes, between Respondent and his former attorneys *** about the identity of any

person occupying or residing" at the Lisson property "during or after February 2020." Specifically, Frederick sought disclosure of statements between Gaca and attorneys Sullivan and Nichele regarding whether Gaca lied by representing that Sealy no longer lived at the Lisson property in February 2020. In addition to relying on Sealy's sworn statement to establish Gaca committed fraud in his affidavit, Frederick also attached a copy of a verified complaint filed by Gaca against Sealy on June 19, 2020. Gaca's complaint for forcible entry and detainer alleged Gaca served Sealy with 30 days' notice to terminate their month-to-month rental tenancy in January 2020. However, Sealy failed to leave the premises as of the date of the filing of the complaint. Frederick acknowledged these communications as being protected by the attorney-client privilege. However, Frederick contended the crime-fraud exception to the rule applied where Gaca used their services to make false statements about the occupants of the Lisson property.

¶ 39        On March 2, 2021, the parties appeared before Judge Carlson regarding Frederick's motion to lift the stay and motion for additional disclosures. Judge Carlson denied both Frederick's motions.

¶ 40        On March 2, 2021, Frederick filed a motion to lift the stay before Judge Jarz in the civil case. On March 5, 2021, Judge Jarz denied Frederick's motion to lift the stay and granted the city of Naperville's petition to intervene.

¶ 41        Frederick appeals.

¶ 42                                II. ANALYSIS

¶ 43                    A. Frederick's Motion for Additional Disclosures

¶ 44        On appeal, Frederick contends the trial court erred when it denied his motion for the disclosure of Gaca's communications with two of his former attorneys (Nichele and Sullivan). As an initial matter, defendants contend that this court lacks jurisdiction to consider the court's

decision to deny Frederick's motion. Frederick filed his interlocutory appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017). Rule 604(a)(1) provides:

> "(1) When State May Appeal. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." *Id.*

According to defendants, jurisdiction is lacking because the denial of Frederick's discovery request is not a suppression of evidence and is not appealable under Rule 604. We agree.

¶ 45　　　　The trial court here did not suppress evidence and did not bar the admission of any evidence of Gaca's communications with Sullivan or Nichele. Instead, the court denied Frederick's request to issues subpoenas to each attorney. In other words, the trial court only ruled that it would not compel the production of such evidence. Ministerial or administrative orders that regulate only the procedural details of litigation cannot be the subject of an interlocutory appeal. *In re A Minor*, 127 Ill. 2d 247, 262 (1989). Examples of such nonappealable orders include subpoenas, discovery orders, and orders relating to the court's control of its docket. *Short Brothers Construction, Inc. v. Korte & Luitjohan Contractors, Inc.*, 356 Ill. App. 3d 958, 960 (2005). The denial of Frederick's request to issue subpoenas—a discovery request—falls within the category of nonappealable orders. Although Frederick claims the court's ruling effectively suppressed evidence, the decision leaves open the possibility for the admission of any evidence Frederick procures at trial. The court's order does not prevent the information sought from being presented at trial. Accordingly, we lack jurisdiction to consider an appeal from the court's denial of Frederick's discovery motion.

¶ 46                                B. Motion to Lift the Stay

¶ 47        Next, Frederick contends that Judge Carlson and Judge Jarz erred in denying his motion to vacate the orders Judge Carlson entered staying the proceedings in the underlying civil case. Frederick contends that Judge Carlson lacked jurisdiction to stay the civil proceedings. Although Frederick contends Judge Carlson lacked jurisdiction, we note that Judge Jarz (the judge presiding over the civil proceedings) later entered an order adopting Judge Carlson's decision to stay the civil proceedings. Frederick does not argue that Judge Jarz lacked jurisdiction to stay the civil proceedings. Therefore, we need not address Judge Carlson's jurisdiction and consider only whether Judge Jarz erred in staying the civil proceedings.

¶ 48        At the outset, Frederick contends that we should apply a *de novo* standard of review because Judge Carlson exceeded his jurisdictional authority when he stayed the civil proceedings. However, as noted above, there is no claim that Judge Jarz lacked jurisdiction to enter the stay. Therefore, we do not apply a *de novo* standard. Instead, when evaluating whether to stay a civil suit to prevent compulsory self-incrimination, this court applies the abuse of discretion standard of review. *Jacksonville Savings Bank v. Kovack*, 326 Ill. App. 3d 1131, 1137 (2002). An abuse of discretion occurs when "the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Bovay v. Sears, Roebuck & Co.*, 2013 IL App (1st) 120789, ¶ 26. Upon review, we find Judge Jarz's decision to stay the proceedings to protect Gaca's fifth amendment privilege is not arbitrary, fanciful, or unreasonable. We hold Judge Jarz did not abuse his discretion in imposing the stay of the civil proceedings.

¶ 49        In this case, Gaca never moved to stay the civil proceedings. Instead, the trial court *sua sponte* entered an order staying the proceedings. When he adopted Judge Carlson's decision to stay the civil case, Judge Jarz explained:

"Well, what I was going to tell you is that in my discretion as far as the various, I think there is about, like, six different elements of that CHB Uptown Properties case. As I get it, I have some discretion deciding these issues and I think that the likelihood of there being some infringement on Fifth Amendment rights is significant in this case, and I don't want to tread on anything that is going to interrupt or upset the apple cart and cause additional extra issues for Judge Carlson."

¶ 50    Ordinarily, a court will consider certain factors before a defendant has testified or provided evidence of his wrongful conduct in determining whether a stay should be granted when a civil proceeding is pending and there is a criminal investigation pending or likely to occur. *United States v. Kordel*, 397 U.S. 1 (1970). Those factors include: (1) the plaintiff's interest in an expeditious resolution of the civil case and any prejudice to the plaintiff in not proceeding; (2) the interests of and burdens on the defendant, including the extent to which defendant's fifth amendment rights are implicated; (3) the convenience to the court in managing its docket and efficiently using judicial resources; (4) the interests of persons who are not parties to the civil proceeding; and (5) the interests of the public in the pending civil and criminal actions. *Kovack*, 326 Ill. App. 3d at 1136.

¶ 51    As to Frederick's interest, he has an interest in a prompt resolution his civil claims. This factor is not significant under the present circumstances. The record shows that the criminal contempt proceeding was scheduled for trial setting. He can promptly pursue his civil claims once the criminal contempt proceedings conclude.

¶ 52    As to Gaca's interest, whether a party's fifth amendment right is implicated is a significant factor for the trial court to consider in deciding whether to stay civil proceedings, "but it is only

one consideration to be weighed against others." *Federal Savings & Loan Insurance Corp. v. Molinaro*, 889 F.2d 899, 902-03 (9th Cir.1989). When issues in a criminal matter significantly overlap with those in the civil proceedings, self-incrimination is more likely. *Kovack*, 326 Ill. App. 3d at 1137. Here, the criminal and civil proceedings have a significant overlap. The criminal contempt proceeding is directed toward the legitimacy of Gaca's filings in the civil suit. Frederick also pursued discovery and sanctions in the civil suit based on Gaca's alleged false statements. Frederick also sought to use Frederick's potential use of the fifth amendment against Gaca in the civil suit. Although Frederick relies on potential incriminating statements Gaca made in the past, Frederick's pending motions in the civil suit may still implicate Gaca's fifth amendment right, and this factor favors staying the civil proceedings until the criminal contempt proceeding concludes.

¶ 53    As to the convenience of the court, the criminal contempt proceeding may resolve many significant issues in the civil suit. The court is justified in staying the civil proceedings to better manage the overall proceedings. The court's need to manage its docket favors entering a stay.

¶ 54    Finally, the interest of nonparties and the public favor the prompt resolution of civil proceedings. The citizens of Naperville have an interest in promptly resolving the public nuisance created by the unlawful operation of boarding houses. This consideration must also be balanced against the public's interest in the protection and exercise of Gaca's fifth amendment right. This factor is neutral.

¶ 55    Having reviewed the trial court's decision under the circumstances, we conclude the court did not abuse its discretion in *sua sponte* issuing a stay of the civil proceedings. Accordingly, the court did not err when it denied Frederick's motion to vacate and lift the stay of the civil proceedings.

¶ 56                                  III. CONCLUSION

¶ 57        For the foregoing reasons, we dismiss in part and affirm in part the judgment of the circuit court of Will County and remand for further proceedings.

¶ 58        Dismissed in part, affirmed in part, and remanded for further proceedings.